IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| TRAVELPASS GROUP, LLC, PARTNER FUSION, INC., RESERVATION COUNTER, LLC<br><br>      Plaintiffs,<br><br>  v.<br><br>CAESARS ENTERTAINMENT CORPORATION, CHOICE HOTELS INTERNATIONAL, INC., HILTON DOMESTIC OPERATING COMPANY, INC., HYATT HOTELS CORPORATION, MARRIOTT INTERNATIONAL, INC., RED ROOF INNS, INC., SIX CONTINENTS HOTELS, INC., WYNDHAM HOTEL GROUP LLC.<br><br>      Defendants. | Case No. 5:18-cv-153-RWS-CMC |

**DEFENDANTS' JOINT MOTION TO COMPEL**

I. **INTRODUCTION**

Defendants (the "Hotels") request that this Court compel plaintiffs (collectively, "TravelPass") to produce two sets of documents, which TravelPass has refused to produce: (1) documents that TravelPass produced to the Federal Trade Commission ("FTC") during the FTC's investigation into TravelPass's false, misleading, and deceptive online advertising practices (the "FTC Documents"), and (2) the documents TravelPass produced in its litigation and arbitration with Expedia (the "Expedia Documents"). These documents bear directly on the core harm and damages that TravelPass alleges here and will show that this action is merely an attempt to shift blame to the Hotels for losses that TravelPass brought on itself or which it has already attributed to others. It is also undisputed that their production presents no burden on TravelPass.

TravelPass's complaint here alleges that the Hotels conspired with each other and with "Gatekeeper" online travel agencies ("OTAs"), including Expedia, to insert "keyword bidding" restrictions into the respective Hotels' individual distribution contracts with each of those OTAs. *See* Compl. Dkt. 1 at ¶ 1. These provisions restrict each of the OTAs, and any "Downstream" OTAs to whom they provide inventory, from bidding on the contracting Hotel's branded keywords in online advertising auctions. TravelPass, a Downstream OTA, asserts that the alleged keyword bidding restrictions are "anticompetitive" under the antitrust laws, and have caused significant injury to TravelPass's business, pointing to different valuations it allegedly received in March 2015 and then later in December 2017. *Id.* at ¶¶ 160-162.

According to its complaint, TravelPass's business model is based on bidding for the Hotels' branded keywords so that when a consumer searches for a specific Hotel brand, he or she will be directed to TravelPass's website instead of the Hotel's website to book a room. The FTC Documents are relevant because the FTC investigated TravelPass for, among other things, using branded keywords to mislead consumers to believe that, when they booked through TravelPass, they were dealing directly with the hotel. The FTC investigation culminated with TravelPass's

entry into a consent decree in December 2017, forcing it to cease the deceptive business practices at the core of its model. The FTC Documents thus bear on the procompetitive (and pro-consumer) justifications for any keyword bidding restrictions imposed by the Hotels, as well as alternate causes of TravelPass's purported loss of business value. Separately, TravelPass filed a lawsuit against Expedia accusing it of the same "anticompetitive" agreement with Hotels it alleges here, but also of misappropriating TravelPass's trade secrets, which TravelPass alleges was the actual cause of its allegedly massive loss in value. The Expedia Documents thus bear on the existence of any alleged conspiracy, and the extent, if any, TravelPass's loss in value was due to keyword bidding restrictions (as opposed to the alleged misappropriation of its trade secrets).

These two sets of documents (the "Requested Documents") go to the heart of TravelPass's claims and damages. Further, having already been collected, organized, and reviewed, their reproduction would impose virtually no burden. Accordingly, this Motion should be granted.

## II.   BACKGROUND

### A.   The FTC Investigates and Sues TravelPass for Deceiving Consumers.

After completing an investigation, the FTC filed a complaint on December 21, 2017 (the "FTC Complaint"),[1] accusing TravelPass of deceptive practices designed to trick consumers into booking rooms through its websites. The FTC alleged that TravelPass's "search engine advertisements are designed around a specific hotel brand name and a specific city," so that when consumers search for a hotel brand in a city, they will see ads for TravelPass's website, instead of the hotel's. *Id.* ¶ 12. TravelPass also designed its online advertisements and websites to convey the false impressions that they are "official advertisements placed by the advertised hotel" and the "official websites…for the advertised hotel." *Id.* ¶ 57. TravelPass also trained its telephone agents to further the misconception that it was affiliated with the hotel. *Id.* ¶¶ 16, 41-54. The FTC alleged

---

[1] *Fed. Trade Comm'n v. Reservation Counter, LLC, TravelPass Group, LLC, and Partner Fusion, Inc.*, No. 2:17-cv-01304, Dkt. No. 2 (D. Utah Dec. 26, 2017).

that consumers suffered "substantial injury" from TravelPass's deception, via hidden prepayment policies and other undisclosed charges. *Id*. ¶¶ 20, 25, 63. Shortly after the FTC Complaint was filed, TravelPass entered into a Stipulated Order for Permanent Injunction and Judgment ("Consent Decree"), which enjoined its deceptive practices. *See id.*, No. 2:17-cv-01304 (Dkt. 5) at 4-6.

### B. TravelPass Sues Expedia Claiming that Its Loss in Business Value Was Actually Caused By Expedia's Theft of Its Trade Secrets.

On March 31, 2017, TravelPass filed a complaint against Expedia in the District of Utah ("Expedia Compl.").[2] TravelPass accused Expedia of entering into the same "anticompetitive" agreement with hotels to restrict keyword bidding that it alleges here, and claimed that Expedia's enforcement of those provisions breached its separate agreement with Expedia. *Id.* at ¶¶ 1, 30-33, 70. TravelPass also accused Expedia of misappropriating TravelPass's trade secrets. *Id.* at ¶ 1. TravelPass alleged that, because of the alleged misappropriation that began in 2014, TravelPass had lost "almost 90%" of its enterprise value by 2017. *Id.* at ¶ 42.[3]

### C. TravelPass Refuses to Produce the FTC Documents and Expedia Documents.

On May 17, 2019, counsel for Hyatt informed TravelPass that the Hotels expected TravelPass to produce the Requested Documents with its mandatory initial disclosures. When TravelPass made its initial disclosures on June 3, it refused to produce the Requested Documents. Thereafter, the Hotels responded on June 13 with a letter detailing why the categories of documents are relevant to the claims and damages alleged here. On July 2, the parties conferred telephonically regarding TravelPass's objections. On July 18, TravelPass sent a letter detailing its objections. Thereafter, on August 14, TravelPass confirmed it would stand on those objections.

---

[2] *TravelPass Group, LLC v. Expedia Inc.*, Case No. 2:17-cv-00246 (D. Utah), Dkt. 1.

[3] In a related complaint it filed against Reservations.com, TravelPass alleged that the theft of its trade secrets "had an immediate and detrimental effect on" its business, including a "precipitous[]" drop in its growth rate from 2014 through that March 2017 complaint. *See* Complaint, *TravelPass Group, LLC v. Benjamin Bros., LLC d/b/a Reservations.com*, No. 2:17-cv-00247, ECF Dkt. No. 2 (D. Utah), at ¶ 30.

**III.    ARGUMENT**

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed. R. Civ. P. 26(b)(1). This Court's Discovery Order commanded the parties to produce "all documents" that are "relevant to the pleaded claims or defenses." Dkt. 112. Evidence that has "any tendency" to make a fact of consequence "more or less probable" is relevant. Fed. R. Evid. 401. Accordingly, "[t]he Court's definition of relevance is broad." *See*, *e.g.*, *United States ex rel. Wright v. AGIP Petroleum Co.*, 2008 WL 11348371, at *2 (E.D. Tex. May 15, 2008) (Craven, Magistrate J.). The Requested Documents fit squarely within that "broad" definition, and TravelPass's excuses for failing to produce them are meritless.

**A.    The Requested Documents Are Relevant and Should Be Produced.**

1.    <u>The Lack of an Answer Does Not Render the Documents Irrelevant</u>.

TravelPass contended in its meet-and-confer letter that the Requested Documents are irrelevant because no Answer has been filed and thus there were no "pleaded defenses." This argument lacks any basis. TravelPass alleges antitrust violations, which it claims led to increased transaction costs for consumers. *See, e.g.*, Compl. ¶ 151. Elements of that claim include an agreement, an unreasonable restraint of trade, and damages. *See Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008). Evidence *negating* an element of a claim is relevant. *See*, *e.g.,* Fed. R. Evid. 401; *Agip Petroleum*, 2008 WL 11348371 at *2 (information "likely to have an influence on or affect the outcome of a claim" is relevant). The Requested Documents bear on the existence of any agreement, the procompetitive justifications for any such restraint, and TravelPass's alleged damages. TravelPass even recently told Judge Schroeder that, "there's going to be substantial discovery" about the FTC and Expedia documents. *See* Aug. 16, 2019 Hr'g Tr. (Dkt. 180) at 46.[4]

---

[4] TravelPass has also issued subpoenas to third parties seeking production of FTC related documents. *See, e.g.,* Excerpt from TravelPass Subpoena to American Hotel & Lodging Association, Ex. 1, at Request No. 24.

TravelPass's admission that the documents *will* be relevant shows that its current position is nothing more than an effort to delay. According to TravelPass, while the motion to dismiss is pending, TravelPass is free to pursue discovery it believes will advance its claims, but the Hotels are precluded from pursuing discovery that disproves them. That framework is plainly unfair.

2. The FTC Documents are Relevant.

TravelPass advanced two additional arguments that the FTC Documents are not relevant: (1) that any claim that the Hotels were trying to curb online consumer deception through keyword bidding restraints is "pretext"; and (2) that certain categories of information produced to the FTC do not deal with keyword bidding. Neither is persuasive.

The claim of "pretext" simply underscores the FTC Documents' relevance. The parties clearly dispute whether TravelPass was deceiving customers such that restricting its ability to do so had procompetitive benefits to consumers. The documents produced to the FTC in the course of the agency's investigation of TravelPass's consumer deception are "likely to have an influence" on the outcome of that factual dispute. *Agip Petroleum*, 2008 WL 11348371 at *2.

Nor do the three categories of documents that TravelPass claims are unrelated to keyword bidding render the FTC Documents irrelevant. Those categories are: (1) communications between TravelPass sales agents and consumers; (2) TravelPass's policies and procedures; and (3) TravelPass's use of different phone numbers for different advertisements of different hotels. However, as the FTC Complaint explained, these issues relate to how TravelPass designs its online advertisements to mislead consumers into believing that its phone numbers are those of the searched hotel (FTC Compl. ¶¶ 16, 27), and how it trains its telephone agents to encourage that deceit. *Id.* ¶¶ 16, 43-47. As the FTC Complaint also makes clear, TravelPass's keyword bidding is the "gateway deception" that hooks customers into its "downstream deception," including its misleading advertisements and call center practices. *See id.* ¶¶ 12-14, 26-27. Thus, these

5

documents are relevant to the procompetitive justifications for the Hotels' individual OTA agreements that contractually preclude TravelPass from continuing that deception.

The FTC Documents are also relevant to TravelPass's claimed damages, and thus to its "asserted claims." The Consent Decree altered TravelPass's business, forcing it to stop: (1) using the branded name or logo of any hotel in any search engine advertisement, webpage, or other advertising to misrepresent that the advertisement is from or sponsored by the hotel; (2) making misrepresentations, including through the use of any name, logo, or photograph, that TravelPass is the advertised hotel itself; and (3) failing to disclose material information in connection with its advertising and sale of hotel room services. *See* Consent Decree at 4-6. TravelPass's deceptive practices surely had some effect on its relative profitability before and after the timing of the Consent Decree. The Hotels are entitled to discover the documents that TravelPass produced to the FTC to account for that impact as part of any assessment of TravelPass's damages claim.

        3.      <u>The Expedia Documents Are Relevant</u>.

The Expedia Documents are also relevant. The Expedia Complaint alleged that Expedia demanded that "Reservation Counter agree to various anti-competitive restrictions" on its keyword search marketing and that, "when Reservation Counter refused to adopt these restrictions, Expedia unilaterally cut Reservation Counter off from access to various hotel lines . . . ." Expedia Compl. ¶¶ 20, 31-33 (alleging Expedia's demands were the "product of collusion between [Expedia] and its hotel partners to restrict competition" in keyword search advertising). These allegations mirror its allegations here. *See, e.g.*, Compl. (Dkt. 1) ¶¶ 145-150.

TravelPass's effort to shield these documents from discovery by arguing that it only brought contract and trade secret misappropriation claims against Expedia is a red herring. For one, Expedia's enforcement of the keyword restrictions at issue here *is the basis of* TravelPass's breach of contract claim. *See* Expedia Compl. ¶¶ 31-33, 70-71. Whatever the differences in legal theory, the asserted factual basis overlaps with the claims here. And if, as TravelPass contends, Expedia

misappropriated TravelPass's valuable trade secrets, destroying its enterprise value during the same time period as the alleged conspiracy here, that tends to disprove TravelPass's allegations that those losses were caused by the Hotels' alleged conduct.  *See* Fed. R. Evid. 401.

    **B.    It is Inefficient and Unfair to Force Hotels to Seek the FTC and Expedia Documents Through the Search Term Process.**

TravelPass's final argument in its meet and confer letter—that the Requested Documents should be limited to ESI searches—is a further effort to avoid producing relevant documents.  The purpose of the Court's ESI Order and search term limitations is to lessen the burden of electronic discovery, not to artificially restrict the production of readily available relevant material.  The Requested Documents are discrete, and have already been organized, reviewed, and produced by TravelPass, thereby rendering them easily producible here with a few clicks of a button.

TravelPass's insistence on limiting productions to the search term process is a transparent attempt to avoid producing relevant discovery and would serve only to *increase* its burden here.  That is contrary to Federal Rule of Civil Procedure 1 and the fundamental purpose of discovery.  *Crostley v. Lamar Cty., Texas*, 2011 WL 13134887, at *3 (E.D. Tex. June 23, 2011) (Craven, Magistrate J.) ("Discovery exists to allow the parties to explore fully the claims and defenses in the case.").  Indeed, courts regularly order the production of previously produced documents precisely because there is little burden to reproduction.  *See Oasis Research, LLC v. Carbonite, Inc.*, No. 4:10-CV-435, 2015 WL 5317600, at *6, n.6 (E.D. Tex. Sept. 11, 2015) (finding it "unlikely" there was any burden in reproduction of gathered documents); *In re Enron Litig.*, No. CIV. A. H-01-3624, 2002 WL 31845114, at *2 (S.D. Tex. Aug. 16, 2002) (ordering production because the burden is "slight" when a party has "already found, reviewed, and organized the documents").

**IV.    CONCLUSION**

For the foregoing reasons, Defendants request that the Court grant this Motion to Compel.

Dated: August 23, 2019                                   Respectfully submitted,

*/s/ Melissa Richards Smith*
Melissa Richards Smith
Texas State Bar No. 24001351
GILLAM & SMITH
303 S. Washington Ave.
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 North Wabash Avenue, Ste. 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 933-9767
sean.berkowitz@lw.com

Christopher S. Yates
Brendan A. McShane
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: (415) 391-0600
Fax: (415) 395-8095
chris.yates@lw.com
brendan.mcshane@lw.com

*Counsel for Defendant*
*Hyatt Corporation*

*/s/ William E. Davis, III*
William E. Davis, III
DAVIS FIRM P.C.
213 North Fredonia
Longview, TX 75601
Tel: (903) 230-9090
bdavis@bdavisfirm.com

David E. Zerhusen
COZEN O'CONNOR
3753 Howard Hughes Parkway, Ste. 200
Las Vegas, NV 89169
Tel: (702) 470-2320
Fax: (702) 470-2355
dzerhusen@cozen.com

Lezlie Madden
COZEN O'CONNOR
1650 Market Street, Ste. 2800
Philadelphia, PA 19103
Tel: (215) 665-7286

Fax: (215) 701-2127
lmadden@cozen.com

David Reichenberg
COZEN O'CONNOR
277 Park Avenue
New York, NY 10172
Tel: (212) 883-4956
Fax: (212) 986-0604
dreichenberg@cozen.com

*Counsel for Caesars Entertainment Corporation*

*/s/ Maria Wyckoff Boyce*
Maria Wyckoff Boyce
HOGAN LOVELLS US LLP
609 Main Street, Ste. 4200
Houston, TX 77002
Tel: (713) 632-1410
Fax: (713) 632-1401
maria.boyce@hoganlovells.com

Justin W. Bernick
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hoganlovells.com

Michael E. Jones
Robert E. Sterken, III
POTTER MINTON PC
110 North College Avenue, Suite 500
Tyler, TX 75702
(903) 597-8311
mikejones@potterminton.com
robert.sterken@potterminton.com

*Counsel for Defendant Choice Hotels International, Inc.*

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
WILSON, ROBERTSON
& CORNELIUS, P.C.
909 ESE Loop 323, Ste. 400
Tyler, Texas 75701
Tel: (903) 509-5000
Fax: (903) 509-5092
jainsworth@wilsonlawfirm.com

Carrie C. Mahan
Brianne L. Kucerik
WEIL GOTSHAL & MANGES LLP
2001 M Street, N.W., Ste. 600
Washington, D.C. 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
carrie.mahan@weil.com
brianne.kucerik@weil.com

Randi W. Singer
Olivia J. Greer
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (202) 310-8007
randi.singer@weil.com
olivia.greer@weil.com

*Counsel for Defendant*
*Hilton Domestic Operating Company Inc.*

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Cole A. Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Rd., Ste. 100
Texarkana, Texas 75503
Tel: (903) 255-1000
Fax: (903) 255-0800
jdoan@haltomdoan.com
criddell@haltomdoan.com

Shari Ross Lahlou
DECHERT LLP
1900 K Street NW
Washington, DC 20006
Tel: (202) 261-3300
Fax: (202) 261-3333
shari.lahlou@dechert.com

Jeffrey L. Poston
Luke van Houwelingen
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

JPoston@crowell.com
LvanHouwelingen@crowell.com

*Counsel for Defendant*
*Marriott International, Inc.*

/s/ Robert S. Hill
Robert S. Hill (Lead Counsel)
Texas Bar No. 24050764
Kelly F. Bagnall
Texas Bar No. 7375800
HOLLAND & KNIGHT LLP
200 Crescent Court, Ste. 1600
Dallas, TX 75201
Tel: (214) 964-9500
Fax: (214) 964-9501
Robert.Hill@hklaw.com
Kelly.Bagnall@hklaw.com

Mark Goracke
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, MA 02116
Tel: (617) 305-2146
Fax: (617) 523-6850
mark.goracke@hklaw.com

*Counsel for Defendant Red Roof Inns, Inc.*

/s/ Jeffrey S. Cashdan
Jeffrey S. Cashdan
Emily Shoemaker Newton
Danielle Chattin
Lohr Beck-Kemp
Alexander Gray
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA  30309-3521
Tel: (404) 572-4818
Fax: (713) 572-5100
jcashdan@kslaw.com
enewton@kslaw.com
dchattin@kslaw.com
lbeck-kemp@kslaw.com
agray@kslaw.com

/s/ Deron R. Dacus
Deron R. Dacus
Texas Bar No. 00790553
Shannon Dacus
Texas Bar No. 00791004
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas  75701
Tel: (903) 705-1117

Fax: (903) 581-2543
ddacus@dacusfirm.com
sdacus@dacusfirm.com

*Counsel for Defendant*
*Six Continents Hotels, Inc.*

*/s/ Lance Lee*

Lance Lee
Texas Bar No. 24004762
Attorney at Law
5511 Plaza Drive
Texarkana, TX 75503
Tel: (903) 223-0276
Fax: (903) 223-0210
wlancelee@gmail.com

Paula J. Morency
Ann H. MacDonald
Michael K. Molzberger
SCHIFF HARDIN LLP
233 S. Wacker Drive, Ste. 7100
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
pmorency@schiffhardin.com
amacdonald@schiffhardin.com
mmolzberger@schiffhardin.com

Robert J. Wierenga
SCHIFF HARDIN LLP
350 South Main Street, Ste. 210
Ann Arbor, MI 48104
Tel: (734) 222-1500
Fax: (734) 222-1501
rwierenga@schiffhardin.com

*Counsel for Defendant*
*Wyndham Hotel Group LLC*

## **CERTIFICATE OF CONFERENCE**

Counsel for Defendants has complied with the meet and confer requirement in L.R. CV-7(h).  Personal conferences required by this rule were conducted on July 3 2019.  Counsel for Plaintiff and counsel for Defendants spoke via telephone regarding the contents of the above-motion.  Appearing for Plaintiffs was Christopher Schwegmann.   Appearing on behalf of the Defendants were Melissa Smith and Brendan McShane, counsel for Hyatt, whom the Defendants designated to speak on their behalf.   Plaintiffs did not agree regarding the requested relief, and repeatedly confirmed that the parties are at an impasse, leaving an open issue for the court to resolve.   Plaintiffs oppose Defendants' motion.

*/s/ Melissa Richards Smith*
Melissa Richards Smith

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 23rd day of August, 2019.

*/s/ Melissa Richards Smith*
Melissa Richards Smith