IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| TRAVELPASS GROUP LLC, PARTNER FUSION INC, RESERVATION COUNTER LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CAESARS ENTERTAINMENT CORPORATION, CHOICE HOTELS INTERNATIONAL INC, HILTON DOMESTIC OPERATING COMPANY INC., MARRIOTT INTERNATIONAL INC, RED ROOF INNS INC, SIX CONTINENTS HOTELS INC, WYNDHAM HOTEL GROUP LLC, HYATT CORPORATION,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § **CIVIL ACTION NO. 5:18-CV-00153-RWS** |

## ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. On May 9, 2019, the Magistrate Judge issued a Report and Recommendation (Docket No. 130) ("R&R"), recommending Defendants' Motion to Transfer Venue (Docket No. 50) be denied. Defendants Caesars Entertainment Corporation, Choice Hotels International, Inc., Hilton Domestic Operating Company, Inc., Hyatt Corporation, Marriott International, Inc., Red Roof Inns, Inc., Six Continents Hotels, Inc. and Wyndham Hotel Group, LLC. (collectively, "Defendants") filed objections to the Report and Recommendation (Docket No. 144). TravelPass Group, LLC, Reservation Counter, LLC and Partner Fusion, Inc. (collectively, "Plaintiffs") filed a response to Defendants' objections

(Docket No. 145). The Court held a hearing August 15, 2019 and now conducts a *de novo* review of the Magistrate Judge's findings and conclusions.[1]

I. **BACKGROUND**

This is an antitrust case involving an alleged conspiracy among hotel chains to eliminate interbrand competition for keyword internet searches. Orig. Compl., Docket No. 1 ¶ 1. Plaintiffs allege Defendants, conspiring with one another and "so-called gatekeeper online travel agencies ('OTAs') like Expedia and others," "rigged bids and engaged in a group boycott to eliminate competing paid search advertisements displayed by internet search engines by agreeing not to bid on one another's branded keywords." *Id.* Plaintiffs assert four causes of action against Defendants, including (1) violation of the Sherman Act, 15 U.S.C. § 1 (*per se* bid rigging/group boycott/market division), (2) violation of the Sherman Act, 15 U.S.C. § 1 (unreasonable restraint of trade), (3) violation of related Utah Antitrust Act § 1 and (4) tortious interference with prospective business relations. *Id.* ¶¶ 164–94.

Specifically, Plaintiffs allege the agreement orchestrated by Defendants reflects an unreasonable restraint of trade that is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶¶ 164–75. According to Plaintiffs, in carrying out their scheme, Defendants also tortiously interfered with Plaintiffs' existing and potential economic relations with customers and

---

[1] A magistrate judge enjoys the authority to decide a motion to transfer venue under 28 U.S.C. § 636(b)(1)(A). *Evol, Inc. v. Supplement Servs., LLC*, No. 3:09-CV-1839-O-BH, 2010 WL 982564, at *1 (N.D. Tex. Mar. 16, 2010) (further stating a district court may reconsider matters decided by a magistrate judge under § 636(b) (1)(A) where a party shows that the magistrate judge's order is clearly erroneous or contrary to law). In this instance, the Magistrate Judge elected to submit a report and recommendation subject to *de novo* review rather than a final order on the motion, thus allowing the undersigned to determine whether to review the Magistrate Judge's opinion under a *de novo* or clearly erroneous standard of review. *See United States v. Raddatz*, 447 U.S. 667, 683 (1980) ("[T]he statute permits the district court to give to the magistrate's proposed findings of fact and recommendations 'such weight as [their] merit commands and the sound discretion of the judge warrants, . . .'") (quoting *Mathews v. Weber*, 23 U.S. 261, 275 (1976)). Under either standard of review, the court's conclusion would be the same.

potential customers by reducing customers' ability to obtain information about available hotel rooms through branded keyword bidding by TravelPass. *Id.* ¶¶ 191–94.

   A.   *MOTION TO TRANSFER*

On February 5, 2019, Defendants filed a motion to transfer venue to the Northern District of Illinois. Docket No. 50. Defendants' motion is based on a putative nationwide class action (*Tichy v. Hyatt Hotels Corp.*, No. 1:18-cv-01959 (N.D. Ill.) ("*Tichy* action")) pending in the proposed transferee court. According to Defendants, there is substantial similarity between the *Tichy* action and this case, and so, "transfer of this subsequently-filed action is proper pursuant to 28 U.S.C. § 1404(a) in the interests of justice and judicial economy, and also is called for under this Circuit's first-to-file doctrine." Docket No. 50 at 4.

In support of their contention that there is substantial overlap between the cases, Defendants point out the *Tichy* action involves five of the hotel companies named as defendants in this case (Hyatt Corporation, Hilton Domestic Operating Company, Inc., Six Continents Hotels, Inc., Marriott International, Inc. and Wyndham Hotel Group LLC). Defendants argue the two lawsuits raise substantially the same allegations against the same hotel chains, arguing they violated the Sherman Act by engaging in a conspiracy to eliminate competition for keyword bidding and that they used their relationships with online travel agencies to further the alleged conspiracy. *Id.* at 13. Defendants further assert the Sherman Act claims involve common factual allegations that will involve common legal theories and evidence. *Id.* at 7–8.

As such, Defendants contend this matter should be transferred to the proposed transferee court that is already acquainted with the relevant issues, "where most of the Defendants are already defending overlapping claims, and where the cases, including discovery and related procedures, may be coordinated efficiently." *Id.* at 4. According to Defendants, without transfer, "there is a risk of inconsistent rulings in separate Districts concerning common issues—including the

threshold issue of the existence of the alleged conspiracy between the Defendants." *Id.* at 8. Defendants further argue maintaining this case in this district "would, in contrast, require duplicative time, energy, and resources from this Court, risk potentially inconsistent rulings, and impose added burden on litigants and witnesses." *Id.* at 4.

In their response, Plaintiffs argue Defendants focus on the so-called "threshold issue" of the existence of the alleged conspiracy but ignore other "numerous and complex issues" that differ between the two cases, including class certification (and whether the requirements of Rule 23 are met), antitrust injury, damages and the extent to which the three defendants here who are not defendants in the *Tichy* action participated in the alleged conspiracy. Docket No. 107 at 5.

### B. REPORT AND RECOMMENDATION

On May 9, 2019, the Magistrate Judge issued her R&R regarding proposed findings of fact and recommendation that Defendants' motion to transfer venue be denied. Docket No. 130. The Magistrate Judge considered the first-to-file rule before addressing Defendants' request to transfer pursuant to § 1404(a). *Id.* at 3 (citing *Needbasedapps, L.L.C. v. Robbins*, No. 5:12cv527, 2013 WL 656169 (W.D. Tex. Feb. 20, 2013) (declining to address a motion to transfer pursuant to 28 U.S.C. § 1404(a) because transfer pursuant to the first-to-file rule was proper)). The Magistrate Judge set forth numerous cases addressing the first-to-file rule, many of which were considered in the context of the Fair Labor Standards Act ("FLSA"). Docket No. 130 at 8–14.

The Magistrate Judge found that due to critical differences between this case and the *Tichy* action, the first-to-file rule does not compel transfer. Although both cases contain similar allegations regarding the existence of an unlawful agreement between the five hotel companies in violation of antitrust laws, the Magistrate Judge concluded the cases do not substantially overlap, noting this case involves different claims, issues and three additional defendants. Docket No. 130 at 14–17.

The Magistrate Judge then applied the traditional rules of § 1404(a). After finding the case could have been brought in the Northern District of Illinois, the Magistrate Judge considered the applicable private and public interest factors. *Id.* at 21–32. She found one public interest factor favored transfer (local interest) and one public interest factor weighed against transfer (court congestion). She found all other factors are neutral. Balancing the factors, the Magistrate Judge concluded Defendants had not shown that transfer to the Northern District of Illinois is clearly more convenient. *Id.* at 33.

## II. <u>OBJECTIONS</u>

In their objections, Defendants assert that transfer of this case to the Northern District of Illinois "is required by the first-to-file doctrine and 28 U.S.C. § 1404(a) to prevent the risk of inconsistent rulings concerning the common core issue, ensure judicial efficiency, and avoid needless duplication of discovery." Docket No. 144 at 1. As argued by Defendants, the determination of whether there is sufficient evidence to demonstrate the existence of an unlawful agreement among the defendants "will entail a complex analysis given . . . the summary judgment framework for antitrust conspiracy cases" and "what will almost certainly be a formidable discovery record given the number of defendants and non-parties involved." *Id.* Defendants argue the R&R erred in relying on "ancillary differences between this case and *Tichy*." *Id.* at 2.

Regarding the § 1404(a) analysis, Defendants argue the R&R erred in finding the private interest factor regarding the cost of attendance for parties and witnesses is neutral. Defendants maintain this conclusion fails to account for the burden to witnesses, including non-party witnesses, who will be required to travel twice and to different districts. Defendants further assert the R&R errs in finding the interest of justice and judicial economy factor neutral, despite acknowledging the overlap on the issue of the alleged conspiracy in the two cases. Finally, Defendants contend the R&R errs in finding the issue of court congestion weighs against transfer.

According to Defendants, after adjusting for these errors, "there are at least three convenience factors favoring transfer, with the rest neutral; transfer is thus warranted under 28 U.S.C. § 1404(a)." *Id.* at 5.

In their response to the objections, Plaintiffs state "the *sole* basis" for Defendants' objections (and the underlying motion to transfer) is the pendency of the *Tichy* action involving an antitrust claim against some of the defendants in this case.[2] Docket No. 146 at 1 (emphasis in original). Plaintiffs assert the Magistrate Judge correctly found this case involves different claims and threshold issues, in addition to different parties, key third parties, witnesses and documents located throughout the country, with no "center of gravity" in any other district. *Id.* Plaintiffs maintain Defendants have not met their evidentiary burden of showing transfer would not be "clearly more convenient."

### III. APPLICABLE LAW

#### A. First-to-file rule

The "Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Stannard v. Nat'l Indoor RV Centers, LLC*, No. 4:18-CV-00366, 2018 WL 3608560, at *1 (E.D. Tex. July 27, 2018) (quoting *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-CV-029, 2008 WL 1836384, at *5 (E.D. Tex. Apr. 22, 2008) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997))). A second-filed court plays a limited role when presented with a motion to transfer or stay based on the first-to-file rule. *Stannard*, 2018 WL 3608560, at *1 (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir.

---

[2] The Court notes that Defendants' motion focused on the pendency of the *Tichy* action in the proposed transferee forum, and Defendants attached only one exhibit to their motion, a Notice of Related Case filed by Karen Tichy in the *Tichy* action.

1999)).  This role is to decide whether the moving party in the second-filed court has demonstrated a "substantial overlap" between the two suits.  *Id.*  If the moving party satisfies this overlap requirement, the second-filed court allows the first-filed court to "resolve the question of whether both [cases] should be allowed to proceed."  *Id.*  "Therefore, the first-to-file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated."  *Huntsman*, 2008 WL 1836384, at *5 (citations omitted).

"The rule does not require the cases to be identical. Instead, the crucial inquiry is one of substantial overlap."  *Cirk Tek, LLC v. Ong Investments, LC*, 212 F. Supp. 3d 709, 712 (W.D. Tex. 2016) (quoting *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)).  The two actions only need "involve closely related questions or common subject matter."  *Sirius Computer Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 827 (W.D. Tex. 2015) (quoting *Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co.*, No. SA–04–CA–864–XR, 2005 WL 357657, at *2 (W.D. Tex. Feb. 1, 2005) (citing *W. Gulf Mar. Ass'n,* 751 F.2d at 728–29)).

Even when two cases substantially overlap, courts may exercise their discretion and decline to apply the rule based on "compelling circumstances."  *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)).  The factors guiding the rule's application are ultimately "equitable in nature," and lower courts are left an "ample degree of discretion."  *Hart*, 290 F. Supp. 3d at 630 (quoting *Kerotest*, 342 U.S. at 183–84).

B. *28 U.S.C. § 1404(a)*

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A district court has broad discretion in deciding whether to

order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008) ("*Volkswagen II*"). The Supreme Court has noted § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Fifth Circuit has set forth that the first "threshold" determination a district court must make under § 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the threshold inquiry is satisfied, "the focus shifts to whether the party requesting the transfer has demonstrated the 'convenience of parties and witnesses' requires transfer of the action, considering various private and public interests." *Pearson v. JP Morgan Chase Bank, N.A.*, No. 4:18-CV-627, 2018 WL 6271982, at *1 (E.D. Tex. Nov. 30, 2018) (quoting *Int'l Fidelity Ins. Co. v. Bep Am., Inc.*, A-17-CV-973-LY, 2018 WL 2427377, at *2 (W.D. Tex. May 29, 2018) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974))).

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314–15. Instead, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315. "Unless the balance of factors strongly favors the moving party, the [p]laintiff's choice of forum generally should not be disturbed." *Volkswagen II*, 545 F.3d at 315 ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."). The private and public interest factors are "not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen I*, 371 F.3d at 203.

## IV. <u>REVIEW</u>

### A. *Whether this case should be transferred pursuant to the first-to-file rule*

The Magistrate Judge concluded this case does not overlap sufficiently with the *Tichy* action such that the first-to-file rule is applicable. In their objections, Defendants assert the R&R acknowledged there was a high degree of overlap between this and the first-filed *Tichy* action. *See* Docket No. 130 at p. 17 (stating in the discussion of the §1404(a) factors there might be a high degree of overlap on the issue of the alleged conspiracy in both cases, but nevertheless finding there are differences between the two cases that favor retention). According to Defendants, the earlier-filed *Tichy* action asserts the same underlying antitrust conspiracy against nearly all of the same defendants and implicates the same core federal antitrust statute pled in the complaint here. As such, Defendants contend this matter should be transferred to the Northern District of Illinois court that is already acquainted with the relevant issues, where most of the defendants are already defending overlapping claims, and where the cases, including discovery and related procedures, may be coordinated efficiently. Defendants argue maintaining this case in the Eastern District of Texas would, in contrast, require duplicative time, energy and resources from this Court, risk potentially inconsistent rulings, and impose added burden on litigants and witnesses.

The first-to-file rule is a discretionary rule by which a district court may decline to hear a case which substantially overlaps with a case in another district court. *Howards Dedicated Operations, Inc. v. CIT Bank, N.A.*, No. 2:17-CV-196-KS-MTP, 2018 WL 8838849, at *2 (S.D. Miss. Jan. 29, 2018) (citing *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011)). Factors relevant to whether substantial overlap exists include whether "the core issue" in each case is the same and whether "much of the proof adduced . . . would likely be identical." *Sweet Little Mexico Corp.*, 665 F.3d at 678 (citation omitted) (alterations in original). Courts also consider the extent to which the cases involve the same parties. *Save Power*, 121 F.3d at 950–51. "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Stannard*, 2018 WL 3608560, at *1 (quoting *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996))).

Here, although both cases contain similar allegations regarding the existence of an unlawful agreement between the five hotel companies in violation of antitrust laws, the Court agrees with the Magistrate Judge that the cases do not substantially overlap. While the cases are related, there are many significant differences (different claimants, claims, allegations, defenses, defendants, witnesses and damages) between them.

      i.    <u>Different types of claimants and claims</u>

In their briefing in support of a motion to dismiss, Defendants acknowledged that the different types of claims and claimants in this case justify different outcomes in certain situations. Docket No. 97 at 4 ("[*Tichy*] is a putative class action brought by a consumer. The *Tichy* denial of a motion to dismiss the consumer claim does not address the lack of antitrust injury that is fatal to the Complaint brought by TravelPass, a downstream distributor of certain Defendants' hotel

rooms."). The *Tichy* action is a putative nationwide class action brought by Karen Tichy on behalf of herself and a putative class of consumers in the United States who, from January 1, 2015 through the present, "paid for a room reserved from any [online travel agency] or Defendants' online websites." Docket No. 88-1 at 10. This is an individual action brought by a "downstream" online travel agency. TravelPass is not a member of the putative class in *Tichy*. Rather, TravelPass distributes Defendants' hotel room inventory and is in competition with Defendants in online travel booking.

    ii.    <u>Different allegations</u>

Whether the requirements of Rule 23 are met for class certification will be a complex issue in the *Tichy* action not present in this case. Although both the *Tichy* action and this case involve allegations of Sherman Act violations, this case alleges more details of the alleged conspiracy. Additionally, this case contains a tortious interference with prospective economic advantage, a claim not present in the *Tichy* action.

    iii.    <u>Different defendants and defenses</u>

Although the *Tichy* action and this case involve five of the same defendants, this case involves three defendants who are not defendants in the *Tichy* action (Caesars Entertainment Corporation, Choice Hotels International, Inc. and Red Roof Inns, Inc.). As mentioned by the Magistrate Judge, "because TravelPass and the plaintiff in the *Tichy* action stand in different relationships to Defendants and the relevant markets, Defendants' arguments regarding antitrust injury and antitrust standing are accordingly different." Docket No. 130 at 17.

    iv.    <u>Different damages</u>

Plaintiffs' damages are also different than the damages sought by the *Tichy* class. Whereas the plaintiffs in the *Tichy* action allege they paid more for hotel rooms and incurred greater costs in time and effort to locate suitable rooms than they would have absent the alleged conspiracy,

Plaintiffs here have alleged Defendants' conduct caused a substantial diminution in the value of its business. *Id.* Defendants have also highlighted the differences in the types of antitrust injury allegedly suffered by plaintiffs in both cases. Docket No. 97 at 4.

Based on the above considerations, the Court exercises its discretion not to apply the first-to-file rule. Defendants have demonstrated that similar issues may arise in both this case and the *Tichy* action, but they have failed to show any substantial likelihood of conflicting rulings. *Buckalew v. Celanese, Ltd.*, No. CIV.A. G-05-315, 2005 WL 2266619, at *3 (S.D. Tex. Sept. 16, 2005). Further, the legal claims in the two cases are not identical. As noted above, Plaintiffs here also raise a tortious interference with prospective economic advantage cause of action. Finally, although the first-to-file rule does not require identical parties, "the fact that the parties are different cuts against an argument for substantial overlap." *Id.* In sum, while there are similarities in the two cases, the undersigned finds the two cases do not involve such substantially similar parties and issues that one court should decide the subject matter of both actions. *Samuel v. Signal Int'l L.L.C.*, No. 1:13-CV-323, 2013 WL 12138878, at *2 (E.D. Tex. Dec. 2, 2013). For these reasons, the Court declines to transfer this case based upon the "first-to-file" rule.

    B.    *Whether this case should be transferred pursuant to § 1404(a)*

Focusing on the *Tichy* action already pending in the transferee court, Defendants assert § 1404(a) also calls for transfer to the Northern District of Illinois. The Magistrate Judge found the four private interest factors neutral and two of the four public interest factors neutral. She found the public interest factor regarding court congestion weighs against transfer and the public interest factor regarding local interest weighs in favor of transfer. Defendants object to the Magistrate Judge's conclusions on the following three factors.

> i. Cost of attendance for the parties and witnesses

When considering this factor, the Court should consider all potential material and relevant witnesses. *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., L.L.C.*, No. 2:19-CV-00079-JRG-RSP, 2019 WL 3017379, at *4 (E.D. Tex. July 10, 2019) (citing *Seven Networks, L.L.C. v. Google L.L.C.*, No. 2:17-CV-00442-JRG, 2018 WL 4026760, at *9 (E.D. Tex. Aug. 15, 2018)). However, "[t]his factor primarily concerns the convenience of nonparty witnesses," and "the convenience of party witnesses is given little weight." *Id.*

Defendants and Plaintiffs both point out the headquarters of Plaintiffs, Defendants and key third parties (i.e., Expedia and Google) are scattered throughout the country. Plaintiffs argued, and the Magistrate Judge agreed, the Northern District of Illinois is no more convenient than this Court with respect to witness travel given the wide geographical distribution of potential party and non-party witnesses. Docket No. 130 at 24 ("With witnesses scattered all over America, a trial in either this district or in Illinois will be inconvenient for some and convenient for others. Considering this, and further considering the lack of information regarding the convenience of specific witnesses, the Court finds this factor is also neutral as to transfer.").

In their objections, Defendants assert the Magistrate Judge's analysis of the convenience of witnesses factor failed to account for the fact that without transfer trial witnesses will be forced to travel twice to appear in court in two different districts. In their response to the objections, Plaintiffs assert witnesses will still have to travel twice if this matter were transferred and the two cases continue on separate tracks.

As an initial matter, regardless of how the cases might be handled in the event this case were transferred, the fact remains that Defendants have failed to identify any specific party or non-party witnesses who would be inconvenienced by retaining venue in this Court. As stated by the Magistrate Judge, "the Court has no information on who any of the eight defendant's relevant

> i.     Cost of attendance for the parties and witnesses

When considering this factor, the Court should consider all potential material and relevant witnesses. *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., L.L.C.*, No. 2:19-CV-00079-JRG-RSP, 2019 WL 3017379, at *4 (E.D. Tex. July 10, 2019) (citing *Seven Networks, L.L.C. v. Google L.L.C.*, No. 2:17-CV-00442-JRG, 2018 WL 4026760, at *9 (E.D. Tex. Aug. 15, 2018)). However, "[t]his factor primarily concerns the convenience of nonparty witnesses," and "the convenience of party witnesses is given little weight." *Id.*

Defendants and Plaintiffs both point out the headquarters of Plaintiffs, Defendants and key third parties (i.e., Expedia and Google) are scattered throughout the country. Plaintiffs argued, and the Magistrate Judge agreed, the Northern District of Illinois is no more convenient than this Court with respect to witness travel given the wide geographical distribution of potential party and non-party witnesses. Docket No. 130 at 24 ("With witnesses scattered all over America, a trial in either this district or in Illinois will be inconvenient for some and convenient for others. Considering this, and further considering the lack of information regarding the convenience of specific witnesses, the Court finds this factor is also neutral as to transfer.").

In their objections, Defendants assert the Magistrate Judge's analysis of the convenience of witnesses factor failed to account for the fact that without transfer trial witnesses will be forced to travel twice to appear in court in two different districts. In their response to the objections, Plaintiffs assert witnesses will still have to travel twice if this matter were transferred and the two cases continue on separate tracks.

As an initial matter, regardless of how the cases might be handled in the event this case were transferred, the fact remains that Defendants have failed to identify any specific party or non-party witnesses who would be inconvenienced by retaining venue in this Court. As stated by the Magistrate Judge, "the Court has no information on who any of the eight defendant's relevant

witnesses may be, where they might be located, or any evidence on which to assess their convenience with respect to this transfer analysis." Docket No. 130 at 24.

As exemplified in several recent opinions from within the Eastern District of Texas, specifically identifying witnesses to testify is required for the Court to perform a proper convenience analysis. *See, e.g.*, *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *22 (E.D. Tex. July 15, 2019). In considering the relative ease of access to proof, Chief Judge Rodney Gilstrap recently discussed the need for specificity in support of motions to transfer under § 1404(a). *Seven Networks*, 2018 WL 4026760, at *4 (citing *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1699 (2018) ("Utterback fails to identify with any specificity which witnesses and what evidence would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit such vague and conclusional assertions.")).

In *Virginia Innovation*, Amazon's defense witnesses were spread across the country. 2019 WL 3082314, at *20. Whereas the plaintiff argued Amazon's witnesses located in Seattle and San Francisco were more important and the Eastern District of Texas was more convenient for those witnesses, Amazon argued "its witnesses [were] widely scattered across the United States and that the West Coast witnesses [were] not more important than the East Coast witnesses." *Id*. In weighing the cost of attendance for willing witnesses factor as to Amazon, Judge Amos L. Mazzant, III stated "[t]his demonstrates why there is a need to specifically identify witnesses, to the best of a party's ability, in their motion to transfer." *Id*. (citing *Seven Networks*, 2018 WL 4026760, at *4). According to Judge Mazzant, without knowledge of how many witnesses are located in each location and their importance to the issues presented at trial, the court is not "able to make an informed inquiry into the true convenience of" Amazon's witnesses. *Id*. Judge

Mazzant, after weighing the convenience of the witnesses presented, found this factor weighed against transfer as to Amazon. *Virginia Innovation*, 2019 WL 3082314, at *21.

In *Seven Networks*, defendant Google identified numerous third-party witnesses located in the proposed transferee district (which the court considered in its discussion of the second private interest factor—availability of compulsory process). 2018 WL 4026760, at *10. Google also identified one willing third-party witness and seven individual employees who allegedly worked and lived in the proposed transferee forum and who had knowledge of the accused functionality or Google's marketing. *Id.* In considering the third private interest factor—cost of attendance for willing witnesses—Chief Judge Gilstrap noted "[s]uch specificity [was] persuasive." *Id.* (further noting "the identification, explanation, and representations that Google has made are precisely the sort which this Court expects in a § 1404(a) motion and finds them credible and a proper basis for consideration" and ultimately determining this factor weighed "slightly in favor of transfer"). *Id.* at *12.

Here, Defendants have not identified any specific witnesses, either before the Magistrate Judge or in their objections to the R&R. Nor have Defendants provided any evidence that any employees "will likely provide testimony that will be relevant at trial in this case." *Virginia Innovation*, 2019 WL 3082314, at *23.

Even ignoring this failure, the Court agrees with the Magistrate Judge that this factor is neutral. Defendants failed to explain their position that witnesses would only be required to travel to a single trial, likely because there is no plausible reason to believe the two cases could be tried in a single trial. Moreover, it is pure speculation that the cases would or could be consolidated for pre-trial purposes, especially as *Tichy* will not complete class certification discovery and briefing

until September 2020. Accordingly, Defendants have failed to show that transferring this case to the Northern District of Illinois would actually be more convenient for any witnesses.

> ii. All other practical problems that make trial of a case easy, expeditious and inexpensive

Defendants object to the Magistrate Judge's conclusion that this factor is neutral. Throughout the briefing on their motion and in their objections, Defendants rely almost entirely on judicial economy (and the pendency of the *Tichy* action in Illinois), which is an aspect of the fourth private "catch-all" factor of "other practical problems that make trial of a case easy, expeditious, and inexpensive," to meet their burden of demonstrating that the Northern District of Illinois is a clearly more convenient venue. Defendants assert this action and the *Tichy* action are similar actions which require similar discovery from overlapping witnesses and involve substantially similar issues regarding the alleged conspiracy. Docket No. 50 at 6–8. According to Defendants, the risk of inconsistent rulings in separate districts concerning common issues is "significant" and weighs "heavily in favor of transfer." *Id.* at 8.

Although not an enumerated factor, judicial economy can be considered when determining whether it is appropriate to transfer a case in the interest of justice. *Virginia Innovation*, 2019 WL 3082314, at *23 (citing *In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349, 1351 (Fed. Cir. 2009)). The Court must use the facts of every case individually to determine the importance of this factor. *Virginia Innovation*, 2019 WL 3082314, at *23 (citing *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (holding "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."). *But see In re Zimmer*, 609 F.3d 1378 (explaining that the convenience considerations may outweigh judicial economy when the overlap between cases is slight)). As noted by the Magistrate

Judge, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh in favor or against transfer. Docket No. 130 at 25 (citing *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 125 (E.D. Tex. 2009) (citing *Volkswagen III,* 566 F.3d at 1351)).

The Magistrate Judge was not persuaded that this case and the *Tichy* action involve "precisely the same issues" so that allowing the two cases to proceed in different district courts would lead to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Docket No. 130 at 27–28 (quoting *Continental Grain*, *Co. v. The FBL-585*, 364 U.S. 19, 25 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent.")). Referencing the differences between the two cases set forth earlier in the R&R, the Magistrate Judge stated that it is unlikely this case and the *Tichy* action could be resolved in a single proceeding. Docket No. 130 at 28. The Magistrate Judge further noted that Defendants ignore the differences in the two cases that will disserve judicial economy should the case be transferred. *Id*. at 29 (noting the plaintiffs in the *Tichy* action will be required to meet the criteria of Federal Rule of Civil Procedure 23 before they can litigate their claims on a class-wide basis, which Plaintiffs argue will necessarily add delay and complications that are not present in this non-class case). Considering that "transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute" as well as the procedural and substantive differences between this case and the *Tichy* action, the Magistrate Judge agreed with Plaintiffs that a transfer would not render the trial of this case more "easy, expeditious, and inexpensive." *Id*. at 30.

In their objections, Defendants assert as follows: (1) forcing identical discovery to proceed on two tracks is antithetical to judicial economy and (2) requiring resolution of the core question of conspiracy by two different courts creates a risk of inconsistent results, adverse to the interest of justice. The benefits courts are attempting to actualize in keeping related cases in the same district include the ability to save time, energy and money. *Virginia Innovation*, 2019 WL 3082314, at *26 (citing *Cont'l Grain Co.*, 364 U.S. at 26). "For example, in patent cases: the parties could coordinate discovery; courts could consolidate cases for pretrial purposes; and the parties could save expense by participating in one claim construction hearing and briefing." *Virginia Innovation*, 2019 WL 3082314, at *26.

The Court is not convinced any of these types of benefits would be realized if this case were transferred to the Northern District of Illinois. Between the two cases, there is no reason to expect the parties would be required to engage in joint discovery, and it is implausible that the cases would be tried before a single jury. In short, Defendants have not persuaded the Court that the Northern District of Illinois would consolidate or coordinate this case with the putative class action that has already been pending for over one year.

Regarding the risk of inconsistent rulings, the Magistrate Judge held the likelihood of conflicting rulings is minimal given the differences between the two cases. Docket No. 130 at 28 n.9. The Court agrees the likelihood of conflicting rulings is minimal. However, to the extent there are previous orders entered in the *Tichy* action that relate to the alleged conspiracy, the Court can reference Chief Judge Rebecca Pallmeyer's reasoning, if necessary, to reduce the risk of inconsistent rulings. *See Virginia Innovation*, 2019 WL 3082314, at *28 & n.42, *29 ("Additionally, the Court is well aware of the previous orders and can reduce any risk of inconsistent rulings by referring to the Claim Construction Order.").

The Court has made a *de novo* review of the objections raised by Defendants and agrees with the Magistrate Judge's conclusion that the last private interest "catch-all" factor does not weigh for or against transfer.

### iii. Administrative difficulties flowing from court congestion

Defendants also object to the Magistrate Judge's analysis of the public interest factor regarding administrative difficulties flowing from court congestion. According to the December 2018 Federal Court Management Statistics report attached to Plaintiffs' response, the median time to trial for the 12-month period ending on December 31, 2018 in the Eastern District of Texas is 19.0 months, and the median time to trial in the Northern District of Illinois for the 12-month period ending on December 31, 2018 is 38.3 months. Docket No. 78-1 at 3–4.

Although the Magistrate Judge noted she is careful not to place undue weight on statistics, she found the difference of almost two years significant and weighs against transfer. Docket No. 130 at 31. In their objections, Defendants state the abstract numbers presented by Plaintiffs in their responsive briefing are countered by the nearly identical discovery deadlines that have now been set in the *Tichy* action. The Court disagrees.

In addition to the statistics provided by Plaintiffs, scheduling orders have now been entered in both cases that establish this case will proceed to trial earlier in this district. The Court has set this case for trial in October 2020, but the *Tichy* action does not have a trial date. The parties informed the Court at the hearing that the briefing on class certification in the *Tichy* action is scheduled to end around the same time as the trial date in this case. Considering this, and further considering the statistics that show that a trial would occur significantly earlier if the case proceeds in the Eastern District of Texas, this factor weighs heavily against transfer. *See Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 2:18-CV-00390-RWS-RSP, 2019 WL 2303034, at

*5 (E.D. Tex. May 30, 2019); *see also C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., L.L.C.*, No. 2:19-CV-00079-JRG-RSP, 2019 WL 3017379, at *5 (E.D. Tex. July 10, 2019) (noting the 2018 statistics for civil cases reveal that the median time between filing and trial of a civil case is 18.9 months in S.D. Tex. and 19.1 in E.D. Tex. and still concluding this factor weighed "slightly against transfer"). Accordingly, Defendants have failed to carry their burden to show that the Northern District of Illinois is clearly more convenient than this forum.

## V. CONCLUSION

The findings and conclusions of the Magistrate Judge are correct, and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. As held by the Magistrate Judge, Defendants have not shown that transfer to the Northern District of Illinois is clearly more convenient. Accordingly, it is hereby

**ORDERED** that Defendants' objections are **OVERRULED** and Defendants' Motion to Transfer Venue (Docket No. 50) is **DENIED**.

**So ORDERED and SIGNED this 29th day of August, 2019.**

*[signature]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE