UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| TravelPass Group, LLC, Partner Fusion, Inc., Reservation Counter, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Caesars Entertainment Corporation, Choice Hotels International, Inc., Hilton Domestic Operating Company Inc., Hyatt Hotels Corporation, Marriott International, Inc., Red Roof Inns, Inc., Six Continents Hotels, Inc., Wyndham Hotel Group, LLC,<br><br>Defendants. | Case No. 5:18-cv-153-RWS-CMC<br><br>**FILED UNDER SEAL**<br><br>**HEARING REQUESTED** |

**DEFENDANTS' MOTION TO PURSUE AND COMPEL LIMITED DISCOVERY**

Defendants Choice Hotels International, Inc., Marriott International, Inc., and Six Continents Hotels, Inc. (collectively, "Defendants"), respectfully request that the Court allow Defendants to take a 30(b)(6) deposition of Hyde Valuations, Inc. ("Hyde") and that the court compel Plaintiffs to produce any communications with the Federal Trade Commission ("FTC") and the notes of their expert, David Leathers.

### INTRODUCTION

This motion is necessitated by TravelPass' practice of selective disclosures and frivolous assertions of privilege and arbitration confidentiality to shield documents that are damaging to its case. To remedy the clear prejudice resulting from this sanctionable conduct, Defendants seek to pursue and compel limited additional discovery.

First, for over a year, TravelPass concealed business valuations performed by an independent appraiser, ████████████████████████████, claiming they were

1

protected by the attorney-client privilege. The Court's order requiring production of these valuations and certain deposition transcripts from the Expedia arbitration, however, has now exposed TravelPass' privilege claim as false. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

It is now clear why. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ TravelPass' knowingly deceptive re-assertion of privilege deprived Defendants of the opportunity to depose Hyde, TravelPass' damages expert, potential TravelPass investors, and key TravelPass personnel about these valuations, which are central to the question of TravelPass' alleged damages. Accordingly, Defendants should be permitted to depose Hyde, at minimum, to avoid the material prejudice TravelPass caused by concealing the Hyde Valuations.

Second, as part of the recent Court-ordered production of deposition transcripts and exhibits from the Expedia arbitration, notes from David Leathers—TravelPass' hired damages expert in both the Expedia case and this case—were produced. These notes should have been produced previously as they flatly contradict Mr. Leathers' testimony in this case. Defendants requested that TravelPass produce all other of Mr. Leathers' notes from the Expedia matter given

the similarities between TravelPass' damages claims and Mr. Leathers' opinions in both cases, and given Mr. Leathers' admitted reliance on his work in the Expedia matter here. TravelPass, however, refuses to produce these additional relevant notes and should be compelled to do so.

Third, it is now clear that TravelPass has been playing fast and loose with respect to its communications with the FTC. TravelPass has prematurely filed a motion *in limine* styled as a motion to exclude all evidence pertaining to the FTC investigation related to TravelPass' deception of consumers into believing they were booking directly with hotels. In support of its motion, TravelPass initially attached a redacted communication from the FTC that appears to memorialize the settlement with the FTC. But the key portions of that document concerning TravelPass' representations to the FTC and its remedial changes to its business practices are redacted. When Defendants requested production of the unredacted version, TravelPass *withdrew its entire motion* and then refiled a nearly identical version but scrubbed of any reference to this document. TravelPass' deceptive conduct culminating in the FTC action is central to numerous issues in this case, including why TravelPass lost rights to access hotel inventory, why its financial performance declined, why investors, once they learned of this conduct would have steered clear of TravelPass, and, of course, Defendants' counterclaims. This document is highly relevant and should have already been produced. TravelPass has no legitimate basis for continuing to withhold it now.

## BACKGROUND

### I. The Hyde Valuations

TravelPass sued Expedia in 2017 seeking damages for the very same allegedly "anticompetitive" restrictions on keyword bidding that it alleges in this case, as well as for theft of trade secrets. *TravelPass Group, LLC v. Expedia Inc.,* Case No. 2:17-cv-00246 (D. Utah 2017) (Dkt. 2 at ¶¶ 1, 30-33, 70). At the time, TravelPass blamed Expedia alone for the purported harm

to its business and associated damages that it is currently seeking from Defendants. *Id*. at ¶ 42. The case eventually went to arbitration. ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████. TravelPass subsequently settled the dispute with Expedia.

On December 17 and 18, 2020, less than ten business days before the close of fact discovery in this case, Defendants discovered various deficiencies in TravelPass' document production in this case when it deposed TravelPass' CEO, Mr. Ryan McCoy. ██████████████████

██████████████████████████████████████████████

████████████████████████████████ Defendants immediately sought the production of the Hyde Valuation, along with other relevant documents identified in the deposition, that were not previously produced. Dkt. 415. Defendants filed a motion to compel on December 30, 2020. In opposing the motion to compel, TravelPass represented to the Court that the Hyde Valuation is a "privileged draft appraisal report" that is "protected attorney-client and work-product information." Dkt. 427 at 3.

On May 11, 2021, this Court granted Defendants' motion to compel. Dkt. 467. Once Defendants received the production of the inappropriately withheld documents, ████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

---

█████████████████████████████████████████████████
█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████ TravelPass, fully aware that these very same documents had been disclosed to Expedia, and that the documents were *highly* relevant to evaluating its damages claims in this case, brazenly withheld the Hyde Valuations, without apprising Defendants or this Court of the prior disclosure to Expedia.

██████████████████████████████████████████████████

████████████████████████████████████████ These valuations are directly at odds with TravelPass' allegations in its original and amended complaints that it supposedly received a valuation of $165 million from an interested investor, Sorenson Capital Partners ("Sorenson"). ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

5

## II. David Leathers' Notes

TravelPass' damages expert in this matter is David Leathers, who was also TravelPass' damages expert in the Expedia arbitration. ▮

▮ Following Mr. Leathers' deposition, Defendants demanded production of these notes. A week later, TravelPass produced certain notes from Mr. Leathers.

Shortly after TravelPass' production of Mr. Leathers' notes, the Court ordered the production of deposition transcripts from the Expedia arbitration. ▮

▮ Defendants inquired whether additional unproduced notes existed. TravelPass did not answer that question and refuses to produce additional notes.

## III. The FTC Letters

In August 2019, Defendants moved to compel TravelPass to produce documents that TravelPass produced to the FTC. Dkt. 181. Though TravelPass opposed that motion, it repeatedly "acknowledged that some of this electronically-stored information may be relevant, and therefore

6

agreed to search those document sets for relevant materials." Dkt. 184 at 1-2, 3, 7, 12. TravelPass argued that "in the absence of pleaded claims or defenses, TravelPass cannot assess the extent to which the FTC Documents . . . or any subset of those documents, are in fact relevant." Dkt. 184 at 7. The Court denied Defendants' motion to compel, noting TravelPass' "represent[ation] it will comply with any ESI requests that conform with the parties' bargained-for E-Discovery Order." Dkt. 262 at 3; *see also id.* 12-13 (noting that "Plaintiffs concede much of the [previously produced documents] may be" relevant). TravelPass has not lived up to that representation to the Court.

On May 24, TravelPass filed its motion to exclude all evidence of the FTC investigation from this matter, Dkt. 484, and attached a redacted letter it received from the FTC ▓▓▓▓ ▓▓▓▓ (the "FTC Letter"). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Defendants promptly requested that TravelPass produce the full, unredacted copy of the letter. Rather than produce the document, TravelPass withdrew its motion and refiled two days later without attaching the redacted FTC letter. Dkt. 489. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Following TravelPass' refiling, Defendants renewed their request

for the FTC Letter and any similar correspondence with the FTC. TravelPass refuses to produce the documents.

## LEGAL STANDARD

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, discovery deadlines may be modified for good cause with the Court's consent. Good cause is shown where a party seeking relief demonstrates that it cannot reasonably meet deadlines notwithstanding its own diligence. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). To determine whether good cause exists, the Court considers: (1) the explanation for the party's failure to meet the deadline; (2) the importance of the discovery; (3) potential prejudice in allowing the discovery; and (4) the availability of a continuance to cure such a prejudice. *Zilberman v. Caroffer, LLC*, CASE NO. 4:15-CV-589, 2016 WL 3060081, at *2 (E.D. Tex. May 31, 2016); *Russell v. Wal-Mart Stores, Inc.* No. 1:06-CV-408, 2007 WL 9725186, at *2 (E.D. Tex. June 7, 2007).

Further, under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence." *Huawei Techs. Co. v. Huang*, No. 4:17-CV-00893, 2018 WL 3862061, at *2 (E.D. Tex. Aug. 14, 2018) (internal citations omitted). "The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, No. 2:07-CV-262(TJW), 2010 WL 774878, at *1 (E.D. Tex. Mar. 2, 2010).

## ARGUMENT

### I.  TravelPass Has Engaged In A Pattern and Practice of Discovery Abuse.

The diligence of the party seeking to alter the existing schedule is paramount in assessing good cause. *See Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("The

'good cause' standard primarily considers the diligence of the party seeking the amendment.") (citation omitted); *see also Smith v. BCE, Inc.*, 225 F. App'x 212, 217 (5th Cir. 2007). Defendants have diligently met the Court's discovery and other deadlines, as the Court recognized in its May 11, 2021 Order granting in part Defendants' motion to compel. *See* Dkt. 467 at 15.

In contrast, TravelPass has attempted to impede efficient discovery, making compliance with the Court's deadlines increasingly difficult. For example:

- TravelPass refused to produce the documents from the Expedia arbitration, telling the Court that it would produce the subset of "relevant" documents. Dkt. 184. But TravelPass withheld over 4,600 pages of highly-relevant documents from the Expedia arbitration which Defendants only obtained on May 18, 2021—after moving to compel and after the fact discovery deadline.

- Likewise, TravelPass refused to produce the documents from the FTC investigation into TravelPass' deceptive practices, again telling the Court that it would produce the subset of "relevant" documents, Dkt. 184, and going so far as to try to keep this highly-relevant FTC inquiry away from the jury, Dkt. 489. 

- After failing to find evidence of *any* change in Defendants' paid search advertising behavior throughout the entire discovery period going back a *decade*, TravelPass filed an Amended Complaint on May 11, 2021—again long after the discovery deadline—that abandoned TravelPass' original 2014 conspiracy date and invented a new 2010 discovery date, Dkt. 468 at ¶¶ 14, 95, 120. While such a drastic change in legal theory would justify completely re-opening discovery and pushing back the case schedule by months, Defendants have sought to keep the case on track by offering a targeted supplement of their expert's analysis of Defendants' paid search advertising data, which again shows *zero* evidence of any conspiracy going back as early as 2003. Dkt. 496.

TravelPass' latest effort to "sandbag" Defendants is to withhold the Hyde Valuations, notes from Mr. Leathers, and the FTC Letter because they all undermine TravelPass' causation and damages claims. TravelPass has clearly arrogated to itself the right to decide what to produce based solely on whether the information helps or hurts its case.

**II.     Good Cause Exists to Permit Defendants To Depose Hyde Valuations.**

TravelPass has repeatedly relied upon the alleged Sorenson valuation of $165 million as a benchmark for its value and claimed damages. Dkt. 468. ¶ 114.



*See, e.g., First Am. CoreLogic, Inc. v. Fiserv, Inc.,* No. 2:10-CV-132-TJW, 2010 WL 4975566, at *2 (E.D. Tex. Dec. 2, 2010) ("Disclosure, however, of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege."); *QinetiQ Ltd. v. Samsung Telecomms Am. L.P.,* No. 2:03-CV-221 (TJW), 2004 WL 7330941, at *3 (E.D. Tex. Aug. 12, 2004) (same); *see also Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416-17 (Fed. Cir. 1997) ("When the attorney-client privilege has been waived … the privilege is gone. The client, therefore, may no longer use the privilege to prevent access to the communications in question by either the party who successfully challenged the privilege claim or by anyone else in the present or future litigation."). While the massive amount of new discovery produced by TravelPass would warrant re-opening depositions of many TravelPass fact witnesses to permit

10

cross-examination on those materials, Defendants' request in this Motion is more modest—the ability to depose Hyde.[2] TravelPass, however, refuses to permit the deposition of Hyde.

Defendants easily satisfy the threshold for "good cause" to pursue the requested discovery. *First*, Defendants could not have taken the deposition of Hyde prior to the fact discovery deadline because TravelPass misleadingly asserted privilege and refused to produce those valuations ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the Court granted the motion to compel on May 11, 2021, Dkt. 467; and TravelPass finally produced the Hyde Valuations on May 18, 2021. Defendants quickly reviewed the over 4,600 pages of new discovery produced and asked TravelPass for a meet and confer on May 24, 2021. That meet and confer took place on May 28, 2021, at which point TravelPass refused to take a position on Defendants' discovery requests. On Monday, May 31, 2021 Plaintiffs responded and confirmed that they did not agree to Defendants' requests. *Cf. Zilberman*, 2015 WL 3060081, at *3 (granting motion to reopen discovery where party had been "unable to discover the evidence giving rise to his request for an extension until after the discovery deadline had already passed").

*Second*, discovery from Hyde is critical. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ TravelPass contends that its business was worth a massive $165 million ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[2] TravelPass has agreed to make Mr. Leathers available for a 2-hour deposition related to the Hyde Valuation.

11

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

TravelPass put the valuation of its company squarely at issue in this case, and Defendants require discovery of Hyde to test TravelPass' assertions and present contrary evidence to the jury. A deposition of Hyde will allow Defendants to understand Hyde's valuation methodology, any assumptions underlying the valuation, the nature of the calculations ████████████ ████ and the differences between the Hyde Valuation and the valuation relied upon by TravelPass. Defendants have no alternative method of obtaining this information.

*Third*, Plaintiffs will suffer no undue prejudice from permitting a deposition of Hyde. TravelPass has flouted the Federal and Local Rules and avoided producing highly relevant information until the eve of summary judgment. TravelPass knew that the Hyde Valuations were not privileged, failed to tell the Court that it had disclosed those documents to third parties (thereby waiving the privilege), and knew full well how its abuses could affect the case schedule by forcing motions practice. Defendants' deposition of Hyde would impose no burden whatsoever on TravelPass, and a short continuance of the fact discovery deadline for the limited purpose of such a deposition will help alleviate the prejudice to Defendants.

### III. TravelPass Should Be Compelled To Produce Any Additional Notes From David Leathers.

*Diligence.* Defendants did not learn that Mr. Leathers had additional notes until his May 4, 2021 deposition. Defendants promptly asked for those notes. And upon receiving the Expedia production and learning additional, unproduced notes existed, Defendants immediately requested that any additional notes be produced.

*Relevance*. Mr. Leathers' notes created during the Expedia matter are directly relevant to his opinions in this case. Just for example,  Given Mr. Leathers' admitted reliance on his work performed during the Expedia arbitration, any notes he has from conversations with TravelPass personnel or experts in that litigation should have been produced because they necessarily informed his opinion in this matter.

*Burden*. For similar reasons above, there is virtually no prejudice to TravelPass in having to produce what should not be more than a handful of documents. Mr. Leathers' notes that have been produced are no more than a few pages long, and both Mr. Leathers—and therefore TravelPass—should have easy access to them.

## IV. TravelPass Should Be Compelled To Produce The FTC Letter.

*Diligence.* Defendants were similarly diligent regarding the FTC Letter. TravelPass filed its motion attaching the FTC Letter and requested an unredacted copy be produced the very next day, noting it should have been produced in the first instance.[3]

---

[3] TravelPass argued in a meet-and-confer letter that Expedia had previously produced a redacted version of the letter, and Defendants never previously sought the full version of the letter. But the previously-produced version of the letter was buried as pages 170-171 of a 500-page exhibit, and was not put squarely at issue until TravelPass filed its recent motion to exclude. In any event, it is not Defendants' responsibility to make sure TravelPass produced unredacted copies of relevant and responsive documents.

*Relevance.* Second, the FTC Letter (plus any other similar letters) should be produced because they are also undeniably relevant to both TravelPass' motion to exclude and the broader case. Defendants' position is that any harm TravelPass suffered flows from factors unrelated to Defendants, including changes to its business TravelPass made in response to the FTC's investigation. ▮

▮

▮

▮ Given the importance of this issue, Defendants are entitled to know precisely what it is that TravelPass represented to the FTC in order to reach the Stipulated judgment.

*Burden.* TravelPass should be able to easily obtain any correspondence it had with the FTC. But more fundamentally, these documents all should have been produced in the first instance. Any inconvenience to TravelPass at this point is entirely of its own making.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant Defendants' Motion to Pursue and Compel Limited Discovery.

Dated: June 3, 2021

*/s/ Deron R. Dacus with permission,*
*by Michael E. Jones*
Deron R. Dacus
Texas Bar No. 00790553
Shannon Dacus
Texas Bar No. 00791004
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com
sdacus@dacusfirm.com

Jeffrey S. Cashdan
Emily Shoemaker Newton
Russell Blythe
Danielle Chattin
Lohr Beck
Logan Hobson
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Tel: (404) 572-4818
Fax: (713) 572-5100
jcashdan@kslaw.com
enewton@kslaw.com
rblythe@kslaw.com
dchattin@kslaw.com
lohr.beck@kslaw.com
lhobson@kslaw.com

*Counsel for Defendant Six Continents Hotels, Inc.*

*Respectfully submitted,*

*/s/ Michael E. Jones*
Michael E. Jones
POTTER MINTON PC
110 North College Avenue, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 593-0846
mikejones@potterminton.com

Maria Wyckoff Boyce
HOGAN LOVELLS US LLP
609 Main Street, Ste. 4200
Houston, TX 77002
Tel: (713) 632-1410
Fax: (713) 632-1401
maria.boyce@hoganlovells.com

Justin W. Bernick
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hoganlovells.com

*Counsel for Defendant*
*Choice Hotels International, Inc.*

*/s/ Jennifer H. Doan with permission,*
*by Michael E. Jones*
Jennifer H. Doan
Texas Bar No. 08809050
Cole A. Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Rd., Ste. 100
Texarkana, Texas 75503
Tel: (903) 255-1000
Fax: (903) 255-0800
jdoan@haltomdoan.com
criddell@haltomdoan.com

Shari Ross Lahlou
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 261-3300
Fax: (202) 261-3333
shari.lahlou@dechert.com

Jeffrey L. Poston
Luke van Houwelingen
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
JPoston@crowell.com
LvanHouwelingen@crowell.com

*Counsel for Defendant Marriott*
*International, Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on May 28, 2021 via telephone conference with the following participants: Justin Bernick, Mike Jones, and Sam Hardy, among others. No agreement could be reached on the issues raised in this motion, leaving an impasse on open issues for the Court to resolve.

*/s/ Michael E. Jones*
Michael E. Jones

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service, on this 3rd day of June, 2021.

*/s/ Michael E. Jones*
Michael E. Jones

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael E. Jones*
Michael E. Jones