**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

TRAVELPASS GROUP, LLC,
PARTNER FUSION, INC.,
RESERVATION COUNTER, LLC,

Plaintiffs,

v.

CAESARS ENTERTAINMENT CORPORATION, CHOICE HOTELS INTERNATIONAL, INC., HILTON DOMESTIC OPERATING COMPANY, INC., HYATT CORPORATION, MARRIOTT INTERNATIONAL, INC., RED ROOF INNS, INC., SIX CONTINENTS HOTELS, INC., WYNDHAM HOTEL GROUP, LLC,

Defendants.

Civil Action No. 5:18-cv-153-RWS-CMC

**JURY TRIAL DEMANDED**

**PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' EXPERT BRUCE ISAACSON**

Plaintiffs TravelPass Group, LLC, Partner Fusion, Inc., and Reservation Counter, LLC (collectively "Plaintiffs" or "TravelPass") file this Motion to Exclude Defendants Marriott International, Inc., Choice Hotels International, and Six Continents Hotels, Inc.'s ("IHG") (collectively, "Defendants") Expert Dr. Bruce Isaacson (the "Motion") and respectfully show as follows:

## I. SUMMARY OF ARGUMENT

In some cases, "a survey can be so badly flawed that it cannot be used to demonstrate the likelihood of consumer confusion." *Viacom Int'l v. IJR Cap. Inv.*, L.L.C., 891 F.3d 178, 197 (5th Cir. 2018) (internal quotations omitted). This is one of those cases for two primary reasons. First, Defendants' survey expert, Dr. Bruce Isaacson,



[redacted] Second, [redacted]. Rather, [redacted] For these reasons, [redacted] Consequently, Dr. Isaacson's report and testimony should be excluded.

## II. STATEMENT OF FACTS

### A. Defendants' Counterclaims

From the outset of this case, Defendants' theory of liability has been that TravelPass confuses customers by designing ads that incorporate Defendants' marks and serving those ads in response to branded keyword searches (e.g., a search for "JW Marriott Austin") on search engines such as Google and Bing. Defendants further allege that confused consumers may click on TravelPass' ad – thinking it is an ad for the hotel – and that TravelPass continues to confuse consumers by appearing to be a website for the hotel.[1] In other words, the theory of confusion underlying Defendants' counterclaims rests on a three-step process: (1) a consumer conducted a branded keyword search, (2) the consumer sees and potentially clicks on a confusing ad on the search engine results page, and (3) the consumer then lands on TravelPass' website, which continues the confusion. Defendants spell out this allegedly confusing process numerous times in their pleadings:

> Plaintiffs' use of the Choice Marks, including their use and purchase of keywords comprised, in whole or in part, of the Choice Marks, their use of the Choice Marks in the text of their advertisements … their use of the Choice Marks on websites, including

[1] Dkt. 208 (Choice's Counterclaims) ¶¶ 27, 38, 39, 40; Dkt. 217 (Marriott's Counterclaims) ¶¶ 1, 4-5, 33-37, 121-123; Dkt. 201 (IHG's Counterclaims) ¶¶ 37, 54-56, 92.

> in connection with Defendants' own contact information … constitutes a deliberate effort to trade on Choice's trademark rights and goodwill, and to confuse customers.

Dkt. 208 (Choice's Counterclaims) ¶ 40.[2]

> TravelPass' scheme begins with its misleading and deceptive online advertising … TravelPass then continues the deception on its websites themselves.

Dkt. 217 (Marriott's Counterclaims) ¶¶ 4-5.[3]

> TravelPass Plaintiffs' use of the SCH Marks and their use and purchase of keywords comprised, in whole or in part, of the SCH Marks, their use of the SCH Marks in the text of its advertisements … and their use of the SCH Marks on their websites constitutes a deliberate effort to cause confusion and to trade on SCH's trademark rights.

Dkt. 201 (IHG's Counterclaims) ¶ 56.[4]

Defendants' corporate representatives further explained

[2] *See also id.* ¶¶ 27, 38, 39.

[3] *See also id.* ¶¶ 1, 33-37, 121-123.

[4] *See also id.* ¶¶ 37, 54, 55, 92.



[redacted]

This process of confusion – branded keyword search, ad, landing page – serves as the basis Defendants' counterclaims of trademark infringement, unfair competition, false advertising, and dilution under the Lanham Act, trademark infringement under Texas common law, and trademark dilution under Texas law.

**B. Dr. Isaacson's Survey**

Dr. Bruce Isaacson conducted [redacted]

Dr. Isaacson [redacted]

[redacted]

---

[redacted]



## III. ARGUMENT & AUTHORITIES

Courts in the Fifth Circuit generally focus on two separate issues to assess the validity and reliability of a consumer survey, "first, the manner of conducting the survey, including especially the adequacy of the universe; and second, the way in which participants are questioned." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 487 (5th Cir. 2004). While it is true that minor flaws in a survey

"generally bear on the weight, not admissibility," *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 890 (S.D. Tex. 2011), serious flaws—particularly those that diminish the reliability of a survey—make any reliance unreasonable. *Scott Fetzer*, 381 F.3d at 488.

**A. Dr. Isaacson's [redacted]**

Dr. Isaacson's [redacted] The "[s]election of the proper universe is a crucial step, for even if the proper questions are asked in a proper manner, if the wrong persons are asked, the results are likely to be irrelevant." 6 McCarthy on Trademarks and Unfair Competition ("McCarthy"), § 32:159 (5th ed.). A survey's "appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer[']s goods or services." *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 507 (5th Cir.1980). A court should exclude a survey when "the sample of respondents clearly does not represent the universe it is intended to reflect." *Big Dog Motorcycles, LLC v. Big Dog Holdings, Inc.*, 402 F.Supp.2d 1312, 1334 (D. Kan. 2005) (finding that a survey had "essentially no probative value" because the survey universe was not properly limited to consumers who were likely to buy the junior user's goods).

Here, [redacted]

[redacted]

[redacted]

[redacted] *See, e.g.*, *Domino's Pizza, Inc.*, 615 F.2d at 264 ("The appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services.").[9] Rather, [redacted]

[redacted]

[9] *See also Exxon*, 628 F.2d at 507; *Paco Sport Ltd. v. Paco Rabanne Parfums*, 86 F.Supp.2d 305, 322 (S.D.N.Y. 2000) ("The courts have held that to be probative on the issue of actual confusion, a survey must rely on responses of prospective purchasers of the products in question." (collecting cases)).

[redacted]

[redacted]

*2.* [redacted]

[redacted] *See* McCarthy § 32:161 (the proper universe for a survey testing forward confusion is comprised of the potential buyers of the junior user's goods or services); *Exxon,* 628 F.2d at 507

("appropriate universe should include a fair sampling of those purchasers most likely to partake of the alleged infringer[']s goods or services.").[11]

[redacted]

[redacted]

[redacted]

[11] *See also Paco Sport*, 86 F.Supp.2d at 322; *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 121 (3d Cir. 2004) (affirming exclusion of survey where the respondents were not part of the relevant customer base).



3.

[redacted]

[redacted] *See Water Pik, Inc. v. Med-Sys., Inc.*, 10-CV-01221-PAB-CBS, 2012 WL 2153162, at *5 (D. Colo. June 13, 2012) *aff'd Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136 (10th Cir. 2013) (excluding survey evidence where, among other flaws, a survey expert's manipulation and intentional deviation from the relevant demographic "raise[d] questions about the survey's overall trustworthiness" and diminished the survey's probative value). [redacted]

**B.** [redacted]

Only expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue is admissible. FED. R. EVID. 702. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). And more specifically, "survey evidence … must comply with the principles of professional survey research; if it does not, it is not even admissible." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) (citing FED. R. EVID. 702 and other cases); *see also Scott Fetzer*, 381 F.3d at 488 ("serious flaws in a survey will make any reliance on that survey unreasonable").

[redacted]





[redacted]

[redacted]

**C.** [redacted]

Defendants' allegations are based on a theory of initial interest confusion, which courts have described as "luring potential clients away from a service provider by initially passing off its services as those of the markholder, even if confusion as to the source of the goods is dispelled by the time any sales are consummated." *Baker v. DeShong*, 90 F. Supp. 3d 659, 664 (N.D. Tex. 2014), *aff'd sub nom. Office of Med. & Sci. Justice, Inc. v. DeShong*, 596 Fed. Appx. 328 (5th Cir. 2015). But "a court cannot

[redacted]

simply assume a likelihood of initial interest confusion, even if it suspects it." *Vail Associates, Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 872 (10th Cir. 2008) (citing McCarthy § 23:6 (4th ed. 1996) ("[E]ven if the marks are almost identical, initial interest confusion is not assumed and must be proven by the evidence.")).[15] [redacted]

When considering confusion rates with respect to sponsored ads, courts across the country have recognized that a consumer must make a conscious choice to click on a confusing ad, and the likelihood of that conscious choice is an integral part of evaluating a likelihood of confusion. As noted by one district court, "[a]dvertisements on Google appear in a list as distinct and independent entries that internet users can browse and select at will. Although the appearance of a link in a results list may enhance the likelihood that a user will view the associated page, ***the user must still make an affirmative decision to select the link***." *Gen. Steel Domestic Sales, LLC v. Chumley*, 2013 WL 1900562, at *10.[17] For this reason, courts have considered real-world click-through rates in their evaluation of

[15] *See also SanMedica Int'l, LLC v. Amazon.com, Inc.*, 2:13-CV-00169-DN, 2016 WL 527055, at *5 (D. Utah Jan. 20, 2016) (same); *Gen. Steel Domestic Sales, LLC v. Chumley*, 10-CV-01398-PAB-KLM, 2013 WL 1900562, at *9 (D. Colo. May 7, 2013), aff'd, 627 Fed. Appx. 682 (10th Cir. 2015) (same); *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, CV H-17-1068, 2017 WL 2957912, at *7 (S.D. Tex. July 11, 2017) ("more is required when invoking the initial-interest doctrine than just showing that the defendant's acts might draw initial interest. Initial-interest confusion requires a showing that it is actually brand confusion that draws the consumer's initial interest.") (internal quotation and citations omitted).

[redacted]

[17] *See also Tartell v. S. Florida Sinus & Allergy Ctr., Inc.*, 12-61853-CIV, 2013 WL 12036430, at *6 (S.D. Fla. Jan. 28, 2013) ("In addition, a search did not automatically redirect the searcher to Dr. Mandel's website. The ad

likelihood of confusion. *See, e.g., 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1244 (10th Cir. 2013) (finding that a click-through rate of 1.5% represented an upper limit for *any potential initial-interest confusion and that such a low* number could not support an inference that the defendant's keyword activity was likely to "lure" consumers away from plaintiff).

[redacted]

[redacted] it should be excluded.

---

was merely presented as an option to click. Unlike Defendants' use of domain names, the likelihood of confusion was much lower."); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, CIV.A.06-0597, 2007 WL 30115, at *7 (E.D. Pa. Jan. 4, 2007) ("At no point are potential consumers "taken by a search engine" to defendant's website due to defendant's use of plaintiff's marks in meta tags. Rather, as in the present case, a link to defendant's website appears on the search results page as one of many choices for the potential consumer to investigate.").

**IV. Conclusion**

Due to these fundamental and fatal flaws, [redacted]

As a result, the Court should grant Plaintiffs' motion and exclude Dr. Isaacson's testimony and report.

Dated: June 29, 2021

By */s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com
Samuel B. Hardy, IV
State Bar No. 24074360
shardy@lynnllp.com
Christopher W. Patton
State Bar No. 24083634
cpatton@lynnllp.com
Ruben A. Garcia
State Bar No. 24101787
rgarcia@lynnllp.com
Cory C. Johnson
State Bar No. 24046162
cjohnson@lynnllp.com
Rebecca L. Adams
State Bar No. 24098255
radams@lynnllp.com
**LYNN, PINKER, HURST & SCHWEGMANN, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

-and-

Todd M. Schneider (*pro hac vice*)
tschneider@schneiderwallace.com
Jason H. Kim (*pro hac vice*)
jkim@schneiderwallace.com
**SCHNEIDER WALLACE COTTRELL KONECKY, L.L.P.**
2000 Powell Street, Suite 1400
Emeryville, California 94608
(415) 421-7100 Telephone
(415) 421-7105 Facsimile

*Attorneys for Plaintiffs*
*TravelPass Group, LLC, Partner Fusion, Inc., and Reservation Counter, LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2021, a true and correct copy of the foregoing was served via the Court's electronic filing system upon all counsel of record.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann

**CERTIFICATE OF CONFERENCE**

Counsel for Plaintiffs have complied with the meet and confer requirement in Local Rule CV-7(h). A personal telephonic conference required by this rule was conducted with Defendants on June 25, 2021. Defendants did not agree regarding the requested relief and have stated they are opposed to the requested relief. The issues in this Motion have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann