IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| TRAVELPASS GROUP, LLC, PARTNER FUSION, INC. and RESERVATION COUNTER, LLC § § § § | |
| v. § | Case No. 5:18-cv-153-RWS-CMC |
| § | |
| CAESARS ENTERTAINMENT CORPORATION, ET AL. § § § | SEALED |

### ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion is pending before the Court:

**Plaintiffs' Motion to Exclude Evidence of Federal Trade Commission Civil Investigation and Proceedings (Docket Entry # 489).**

The Court, having carefully considered the relevant briefing and hearing arguments of counsel June 16, 2021, is of the opinion the motion should be **DENIED**.

### I. BACKGROUND

This is an antitrust case involving an alleged "horizontal conspiracy among the nation's leading hotel chains to limit or eliminate competition for internet ad placements in response to internet searches for hotel-branded keywords, a technique millions of customers use to book hotel rooms online each year." Docket Entry # 468, ¶ 1. Plaintiff TravelPass Group, LLC and its predecessor or related entities, Reservation Counter, LLC, and Partner Fusion, Inc. (collectively, "TravelPass" or "Plaintiffs") are downstream online travel agencies ("OTAs") that sell hotel rooms from different chains to consumers in the United States. *Id.*, ¶¶ 5, 41. According to Plaintiffs, there

are two types of OTAs: (1) Gatekeeper OTAs, including Expedia and Priceline, that maintain direct relationships with major hotel chains to market hotel inventory online and (2) Downstream OTAs, like TravelPass, that have affiliate agreements with Gatekeeper OTAs for access to hotel inventory. *Id*., ¶¶ 5, 42. Plaintiffs' business model includes bidding on branded keyword search results to attract hotel consumers to the hotel inventory on its websites. *Id.*, ¶¶ 44, 48.

Plaintiffs originally filed this antitrust case against eight hotel chains ("Defendant Hotels"). As of this date, Plaintiffs' claims against Caesars Entertainment Corporation, Hilton Domestic Operating Company, Inc., Hyatt Corporation, Red Roof Inns, Inc., and Wyndham Hotel Group, LLC have been dismissed, leaving only TravelPass' claims against Marriott International, Inc., Choice Hotels International, Inc., and Six Continents Hotels, Inc. (collectively, "Defendants"). According to Plaintiffs' Amended Complaint, which was filed on May 11, 2021, Defendant Hotels entered into a conspiracy, which had "three interlocking components," "with the purpose and intent of weakening both Gatekeeper and Downstream OTAs by excluding them from effective participation in branded keyword search advertising." *Id*., ¶ 9.

Specifically, Plaintiffs allege as follows: (1) "Defendant Hotels and their co-conspirators protected their flanks by entering into a predicate bid-rigging agreement that prevented or eliminated direct competition among themselves for branded keywords;" (2) "Defendant Hotels and their co-conspirators agreed to leverage this security to negotiate more favorable terms with Gatekeeper OTAs like Expedia and Priceline;" and (3) "Defendant Hotels worked together to deny Downstream OTAs like TravelPass cost-effective access to hotel inventory, reducing or eliminating their ability to compete effectively for branded keyword search advertising placement." *Id*., ¶¶ 11-13. Plaintiffs allege Defendant Hotels' conspiracy "operated with the goal of limiting or eliminating competition from OTAs." *Id.*, ¶ 14.

The fact discovery deadline was December 30, 2020. Docket Entry # 382. The expert discovery deadline was May 4, 2021. Docket Entry # 457. The pretrial conference is set for October 5, 2021, with jury selection and trial scheduled October 25, 2021. *Id.*

## II. MOTION TO EXCLUDE

Plaintiffs move the Court to exclude from summary judgment and trial certain testimony and documents relating to a civil investigation and complaint brought by the Federal Trade Commission ("FTC") against TravelPass.[1] Docket Entry # 489 at p. 1. According to Plaintiffs, Defendants show their intent to use the FTC Documents to prove liability by extensively quoting and referencing them in the facts section of their counterclaims. *See* Docket Entry # 489 at p. 3; *see also id.* at p. 4 (stating Defendants introduced the FTC documents in "almost every deposition of TravelPass' employees and former employees" and also seek to introduce the FTC documents into their claims through their experts, "despite the fact that no expert asserts any opinion that relies upon the FTC proceeding in any way").

In their motion, Plaintiffs argue the Court should exclude the FTC documents, which are as follows: (1) the FTC Complaint; (2) the FTC Stipulation and Consent Decree and settlement communications; and (3) the FTC investigation documents. As presented in oral argument on June

---

[1] According to Plaintiffs, the FTC began an investigation of TravelPass in 2015, "as a result of a lobbying campaign spearheaded by the American Hotel & Lodging Association." Docket Entry # 489 at p. 1. Defendants assert the FTC began investigating TravelPass in response to the magnitude of consumer complaints submitted to the Better Business Bureau about TravelPass. Docket Entry # 529 at p. 7.
  Both sides agree that in December of 2017, the FTC publicly filed a complaint against TravelPass. According to Plaintiffs, "TravelPass simultaneously enter[ed] into a voluntary stipulation and consent order, in which it admitted no liability and paid no fines." Docket Entry # 489 at p. 2. According to Defendants, "the 20-year Consent Decree enjoining TravelPass from misrepresenting itself as being affiliated with any hotel, failing to disclose material information, including that customers had reached a third-party travel agency and not the hotel itself, and misrepresenting the material terms of any travel product, including the nature of any refund or cancellation policies. . . . Additionally, the FTC required TravelPass to establish certain call center monitoring procedures.*"* Docket Entry # 529 at p. 8. Defendants further assert that TravelPass, in response to the FTC investigation, made certain changes to its marketing practices that negatively impacted its business. *Id*. at pp. 8-9.

16, 2021, Plaintiffs assert the FTC Stipulation and Consent Order and settlement communications are inadmissible under Rule 408. Plaintiffs further assert the probative value of the FTC investigation and lawsuit is substantially outweighed by the danger of unfair prejudice, confusion, and wasting time at trial under Rule 403. Finally, Plaintiffs argue the FTC Complaint, FTC Stipulation, and Consent Order are inadmissible hearsay and do not fall under any hearsay exception under Rule 803.

**B.     Defendants' response**

As an initial matter, Defendants assert Plaintiffs' motion to exclude should have been more properly filed as a motion *in limine* rather than a motion to exclude. *See* Docket Entry # 579 (Hearing Tr.) at 100:10-12. Substantively, Defendants first assert the FTC evidence is relevant. Defendants state Plaintiffs have affirmatively placed the issue of the FTC investigation into this case as evidence of their alleged horizontal conspiracy. *Id.* at 100:15-101:3 (citing Docket Entry # 468, ¶ 103 (alleging direct evidence of horizontal coordination of efforts to reduce TravelPass' ability to compete by "proof that the Defendants and their co-conspirators jointly lobbied the Federal Trade Commission, state attorney generals, and others to target TravelPass and other Downstream OTAs")).

According to Defendants, not only have Plaintiffs put into issue Defendants' intent in raising issues with the FTC, but the FTC investigation also "shows the veracity of the concerns of the defendants in this case for protection of their trademarks." *Id.* at 102:5-15. Defendants argue the disputed documents are admissible to show Plaintiffs' knowledge of misrepresentations and consumer confusion, as well as their state of mind or intent. *See id.* at 103:11-25 (arguing the evidence is relevant to Defendants' counterclaims and showing willful infringement and unclean hands). Defendants further assert the FTC evidence is "important to show that the damages and the

valuation of the business that [TravelPass] put in place is not appropriate." *See id.* at 107:22-24. Defendants disagree with Plaintiffs' assertion the probative value of the FTC evidence is outweighed by unfair prejudice to TravelPass.

Defendants further assert the FTC evidence is not hearsay because they do not intend to use the evidence for the truth asserted. Defendants state they plan to offer this highly relevant evidence to, at minimum, (1) establish the effect of the FTC's investigation and Consent Decree on Plaintiffs' financial performance and reputation with potential investors, (2) establish Plaintiffs' knowledge, intent, and state of mind regarding its marketing, advertising, promotion, and operation of its website and call centers, and (3) rebut Plaintiffs' argument that consumer complaints regarding TravelPass were *de minimis* or that Defendants' concern about them was pretextual.

According to Defendants, even if they sought to use the FTC evidence only to prove the truth of the matter asserted (which they are not), it would be admissible under prevailing Fifth Circuit law. As one example, Defendants contend the FTC Complaint is admissible under the public records exception to the hearsay rule unless it is untrustworthy, which Plaintiffs do not claim. Regarding the Consent Decree, which Plaintiffs voluntarily entered, Defendants assert it qualifies as a statement of a party opponent.

**C.     Plaintiffs' reply**

In reply, Plaintiffs state Defendants' response reveals Defendants' intent to use the FTC documents to prove liability and also underscores "the danger of undue prejudice, likelihood of confusing the jury, and wasting time at trial if evidence of the FTC proceedings is admitted." Docket Entry # 540 at p. 1. Plaintiffs assert "Defendants' arguments regarding the supposed probative value of the FTC investigation are meritless given that Defendants' own experts did not assert any material opinions based on the FTC proceedings and TravelPass' 'knowledge' that there were consumer

complaints is not genuinely in dispute." *Id.* at pp. 1-2. According to Plaintiffs, "Defendants rely on distinguishable case law in an attempt to skirt the hearsay issue. But, even if the FTC proceedings were admissible under the hearsay rules, the Court should still exclude this evidence under Rule 403 and Rule 408." *Id.* at p. 2.

### III. DISCUSSION[2]

**A.      Whether the FTC settlement documents are inadmissible under Rule 408**

Plaintiffs assert Defendants show their intent to use the FTC documents to prove liability by extensively quoting and referencing them in the facts section of their counterclaims. According to Plaintiffs, the great weight of authority supports exclusion of the FTC Stipulation, Consent Order, and settlement communications under Federal Rule of Evidence 408. *See Henson v. Turn, Inc.*, Civil Action No. C 15-01497 JSW, 2018 WL 6605624, at *2 (N.D. Cal. Dec. 17, 2018) (holding settlement evidence used to support the "validity . . . of a disputed claim" inadmissible under Rule 408); *see also Quasebarth Quasebarth v. Green Tree Servicing, LLC*, Civil Action No. 4:14-CV-223 (CDL), 2016 WL 427087, at *3, n. 2 (M.D. Ga. Feb. 3, 2016) (noting, among other things, the FTC consent order was inadmissible under Rule 408, as it was a statement made pursuant to settlement); *see also Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, Civil Action No. 3:11-CV-268 JD, 2016 WL 10706086, at *6 (N.D. Ind. Oct. 28, 2016) ("Any such consent decree is inadmissible hearsay under Rules 801 and 802, and even if such a decree involved a party opponent, consent decrees constitute compromised claims that are not admissible under Rule 408. *See, e.g., United States v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (noting that with respect to evidence relating to an FTC settlement, including the terms of a consent decree, Federal Rule of

---

[2] The Court discusses the arguments in the order Plaintiffs presented them at the June 16, 2021 hearing.

Evidence 408 prohibits the admission of statements made in the course of settlement to prove liability).").

Rule 408 provides as follows:

(a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408. Whether to permit the evidence for another purpose is within the discretion of the trial court. *Branch v. Fid. & Cas. Co. of New York*, 783 F.2d 1289, 1294 (5th Cir. 1986) (citing *Belton v. Fibreboard Corp.*, 724 F.2d 500 (5th Cir.1984)).

In their response, Defendants assert Rule 408(b) does not preclude the introduction of such evidence when it is "being offered for a purpose other than to establish liability." Docket Entry # 529 at p. 16 (citing *S.E.C. v. Pentagon Capital Mgmt. PLC*, Civil Action No. 08 CIV. 3324, 2010 WL 985205, at *4 (S.D.N.Y. Mar. 17, 2010)). In *Pentagon Capital*, a civil case by the SEC, the court found that a consent decree with the SEC was admissible under Rule 408 because it was being offered not "to establish liability against the parties who settled [,] but to offer evidence as a shield" against the SEC's allegations. *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (quoting *Pentagon Capital*, 2010 WL 985205, at *4). Specifically, the court

7

stated as follows:

> Here, Defendants are not trying to use the settlements to establish liability against the parties who settled but to offer evidence as a shield because the SEC's findings that others were aware of, and facilitated, market timing and late trading tend to negate the Commission's allegation that the defendants in this action deceived those parties. Such evidence is not precluded by Rule 408 because it is being offered for a purpose other than to establish liability. *United States v. Gilbert*, 668 F.2d 94, 97 (2nd Cir.1981) (court allowed an earlier consent decree between defendant and the SEC to be introduced to show defendant's awareness of SEC requirements).

*Pentagon Capital*, 2010 WL 985205, at *4.

In *Platinum*, the court distinguished *Pentagon Capital* on the basis that "it was the defendants, not plaintiff, who sought admission of the consent order in that action." 828 F. Supp. 2d at 594 (citing *Pentagon Capital*, 2010 WL 985205, at *4). The court in *Platinum* further noted the plaintiffs proffered "no similar defensive purpose regarding the admissibility of the CFTC's findings." *Id.*

Here, Defendants state they have offered several such defensive purposes. Defendants explain they do not seek to use the Consent Decree as a proxy to establish liability; rather, the Consent Decree is probative evidence rebutting Plaintiffs' causal damages, showing Plaintiffs' knowledge and intent in connection with Defendants' counterclaims, and undercutting Plaintiffs' affirmative defenses to those counterclaims. They further state they "are amenable to an appropriate jury instruction counseling the jury on how the evidence regarding the Consent Decree may be considered." Docket Entry # 529 at p. 16.

The Court also finds instructive a recent case from within the Fifth Circuit. In *Dempster v. Lamorak Ins. Co.*, Civil Action No. 20-95, 2021 WL 954768 (E.D. La. Mar. 12, 2021), the defendants opposed the plaintiffs' motion to reconsider the judgment regarding the plaintiffs' motion *in limine* to exclude bankruptcy documents. *Id.* at *1. The court previously granted in part and

denied in part the plaintiffs' motion *in limine*, holding the bankruptcy documents containing settlement information would not be admitted to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or contradiction but might "be admissible for other purpose such as to show a witness's bias or prejudice." *Id*. at *2. The order did not state the documents would be admitted for another purpose, but rather that the issue "must be decided in the context of trial and it would be inappropriate to issue a blanket order excluding all of the bankruptcy documents which contained settlement information in advance of trial." *Id*.

The plaintiffs moved for reconsideration, first arguing the motion *in limine* should have been granted "in its entirety." *Id.* In response, the defendants argued, among other things, as follows:

> The Avondale Interests next assert that Federal Rule of Evidence 408 permits the settlement evidence found within the bankruptcy documents to be admitted for limited purposes and 'does not provide a blanket prohibition to admission of all bankruptcy trust claims before the jury, which is what Plaintiffs preemptively seek here.' The Avondale Interests argue that evidence of settlements may be used to show witness prejudice or bias, which the Avondale Interests anticipate may be relevant in the instant case as 'Plaintiff's counsel may attempt to minimize any evidence of [Decedent's] exposure to asbestos that is attributable to settled and bankrupt entities.' The Avondale Interests urge this Court to 'consider the admissibility of settlement evidence" within the bankruptcy documents on a case-by-case basis during trial' instead.

*Id.* at *3 (internal citations omitted). The court held as follows:

> Plaintiffs now argue that the bankruptcy documents should be excluded in their entirety because they contain evidence of settlement agreements Defendants entered with the bankrupt entities. Plaintiffs' argument, however, is too sweeping. Federal Rule of Evidence 408 'contains a broad exception' under which evidence of a settlement may be admitted for certain purposes, including proving witness bias and prejudice. Because Rule 408 clearly allows for the admissibility of such evidence in certain limited circumstances, it would be inappropriate to issue a blanket order prohibiting the admission of bankruptcy documents containing evidence regarding settlements for all purposes in advance of trial. These issues must be decided in the context of trial. Thus, because this Court 'has discretion to admit evidence of a settlement' for purposes other than to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or contradiction, Plaintiffs have not shown that reconsideration of the September 16, 2020 Order is

warranted.

*Id.* at *5 (internal citations omitted).

Considering Rule 408 clearly allows for the admissibility of settlement evidence in certain limited circumstances, and further considering Defendants have offered potential defensive purposes regarding the admissibility of such evidence, the Court finds it would be inappropriate at this time to issue a blanket order prohibiting the admission of the FTC settlement documents for all purposes.[3] This part of Plaintiffs' motion is denied at this time.

**B.     Whether the FTC documents lack probative value**

Plaintiffs further argue the FTC investigation and documents are inadmissible under Federal Rule of Evidence 403 because they lack probative value and are highly prejudicial. *See* Docket Entry # 489 at pp. 9-11. Federal Rule of Evidence 403 provides as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

*United My Funds, LLC v. Perera*, 470 F. Supp. 3d 660, 662 (E.D. Tex. 2020) (quoting FED. R. EVID. 403). In *Perera*, District Judge Mazzant held, in ruling on a motion *in limine*, that a Texas Department of Banking consent order against the owner of United My Funds was hearsay and did not fall under the admission against interest exception to hearsay. *Id*. (further noting the owner signed the consent order as to form, not substance). However, Judge Mazzant held the facts underlying the consent order could be used to impeach the general character of the owner for truthfulness, noting Rule 403 did not change the court's analysis. *Id.* at 662-63. According to Judge

---

[3] Notably, in both the *Pentagon Capital* and *Dempster* cases, the courts were considering the issue in the context of motions *in limine*.

Mazzant, impeaching the owner with the underlying facts of the consent order would result in some degree of prejudice, but the prejudice did not substantially outweigh the probative value of the evidence. *Id.* at 663 (citing FED. R. EVID. 403).

Here, Plaintiffs argue the FTC proceedings lack probative value, pointing out the FTC investigation was settled without an admission of liability. Docket Entry # 489 at pp. 9-10 (citing *IV Sols., Inc. v. United Healthcare Servs., Inc.*, Civil Action No. 12-4887-GAF MRWX, 2014 WL 5846805, at *3 (C.D. Cal. Nov. 12, 2014) (ruling in the context of a motion *in limine* that evidence of the New York litigation, which ended in a settlement with no admission of liability, was of "questionable relevance under Rule 401 and properly excluded under Rule 403")). Plaintiffs further point out Defendants' experts do not rely on the FTC proceedings for any opinion. According to Plaintiffs, the FTC proceedings do not support Defendants' burden of proof for any element. Plaintiffs acknowledge Defendants may introduce evidence of changes made to TravelPass' website and call center, as well as references to customer complaints, without referencing the FTC investigation itself. Plaintiffs made it clear at the hearing they are not at this time arguing to keep out the underlying consumer complaints. *See* Docket Entry # 579 at 93:19-24. What is more, Plaintiffs argue the FTC proceedings will cause significant prejudice, confusion, and will waste time by leading to a mini-trial within a trial regarding the impetus for the FTC investigation (i.e. that the Hotel Defendants conspired to prod the FTC into investigating TravelPass). *See also id.* at 96:16-18 ("I don't know how many of those [ten deposition] hours are now going to be consumed by FTC stuff; but against, that would be highly wasteful, counterproductive, and confuse the jury").

Defendants argue Rule 403 does not apply because there is strong probative value and no substantially outweighed by any unfair prejudice. Defendants first assert the FTC evidence will be used to rebut causal damages. According to Defendants, a core aspect of their antitrust defense is

that to the extent Plaintiffs' business faltered, it was due to factors unrelated to Defendants, including the changes TravelPass made in response to the FTC investigation. See Docket Entry # 529 at p. 9  Defendants argue precluding any reference to the FTC investigation and its effect on Plaintiffs' business would severely prejudice Defendants,

Second, Defendants contend the FTC evidence shows TravelPass' diminished market value. Defendants state they will offer evidence that the FTC investigation adversely impacted TravelPass' marketability, and therefore, its enterprise value — one of TravelPass' two damages theories. *Id*. Defendants argue the FTC evidence is directly relevant to defending against Plaintiffs' inflated damage claims. *Id*.

Third, Defendants state the FTC evidence will show that complaints about TravelPass were not *de minimis* and that Defendants' concerns about them were legitimate. *Id*. at p. 12. Defendants assert they will offer the FTC evidence to (1) demonstrate that consumer complaints were so pervasive that the FTC intervened to protect the public, and (2) corroborate that the hotels' concerns about TravelPass' consumer deception were valid and non-pretextual. *Id.* According to Defendants, these facts are central to Defendants' defense that TravelPass lost access to hotel inventory not due to any conspiracy, but because Defendants' guests were being deceived and complaining to the

hotels in significant numbers. *Id*.

Finally, Defendants assert the FTC evidence that Plaintiffs seek to exclude is highly probative of TravelPass' intent regarding its use of Defendants' trademarks and awareness of actual consumer confusion and deception resulting from its conduct. As an example, Defendants argue Plaintiffs cannot claim ignorance of actual consumer confusion in light of the fact that TravelPass "provided the FTC with this very evidence, and the FTC publicly filed the complaint and the consent decree documenting instances of deceptive conduct and actual consumer confusion." *Id.* (citing Ex. 28).

Defendants have provided numerous reasons why the FTC evidence has probative value in this case. The Court agrees the probative value of the FTC evidence is not substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Accordingly, this part of Plaintiffs' motion is denied.

**C.      Whether the FTC documents are inadmissible hearsay**

Finally, Plaintiffs argue the FTC documents are inadmissible hearsay and do not fall under any exception. Defendants assert they do not intend to use the FTC documents, including the Consent Decree, to prove the truth of the matter asserted or to prove liability. According to Defendants, even if they sought to offer the FTC evidence to prove the matter asserted, the evidence would be admissible under various exceptions to the hearsay rule. First, Defendants argue The FTC Complaint would qualify under the public record exception of Federal Rule of Evidence 803(8), which provides as follows:

> A record or statement of a public office [is admissible] if: (A) it sets out: . . . (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Docket Entry # 529 at p. 13 (quoting FED. R. EVID. 803(8)). "Opinions and conclusions, as well as facts, are covered by Rule 803(8)(C)." *Id.* (quoting *Moss v. Ole S. Real Est., Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)).

According to Defendants, the Fifth Circuit has recently addressed this issue and concluded that an agency complaint is admissible under the public records exception in Federal Rule of Evidence 803(8)(iii). In *United States v. Gluk*, 831 F.3d 608 (5th Cir. 2016), the Fifth Circuit reversed the district court's exclusion of an SEC complaint as hearsay, concluding the SEC complaint should have been admitted:

> Finally, the SEC's clawback complaint **unambiguously represents an official action of the SEC**. In the case of all three SEC documents, they were transmitted or filed by an SEC attorney to others outside the SEC. When an agency professional transmits a document to others outside the agency, **that document is presumptively a factual finding of the agency**. That presumption could be easily rebutted by evidence that others in the agency, such as superiors, had disavowed the contents of the document or otherwise 'declined to accept' those contents.

Docket Entry # 529 at p. 13 (quoting *Gluk*, 831 F.3d at 614 (emphasis added by Defendants)).

At the hearing, Plaintiffs argued *Gluk* is "highly distinguishable" because the documents sought in that case were two SEC memoranda that "unambiguously had factual findings by the SEC and a clawback complaint" which the criminal defendants wanted to use for "defense, not offense." Docket Entry # 579 at 97:18-98:15.  Plaintiffs state there is only about a half of a page of discussion as to the memoranda (which "probably fell under the public records exception of hearsay"), and the Fifth Circuit did not "analyze in any depth at all . . . why the clawback complaint would also be admissible." *Id.* at 98:16-23. According to Plaintiffs, in this case, there are no factual findings and no admission of liability; it is just a complaint with "allegations and nothing more." *Id.* at 99:16-21.

Defendants argue the FTC's Complaint here "unambiguously represents an official action of the [FTC]," and it is "presumptively a factual finding of the [FTC]" because it was approved by

a majority of the FTC Commissioners, filed in court, and posted on the FTC's website. Docket Entry # 529 at p. 13 (quoting *Gluk*, 831 F.3d at 614 ). The Court agrees *Gluk* is controlling.

In support of its hearsay arguments regarding the FTC stipulation consent decree, Plaintiffs primarily rely on *United My Funds, LLC v. Perera*, 470 F. Supp. 3d 660 (E.D. Tex. July 2, 2020). *See* Docket Entry # 579 at 97:1-9 ("And in the *United My Funds, LLC, v. Perera* case, Judge Mazzant expressly decided a very similar issue and held that where the defendant did not admit the substantive allegations in the consent order, the consent order does not fall under the ambit of Rule 801(b)(2). Therefore, it is not an admission against interest by a party opponent.").[4] For their part, Defendants assert the Consent Decree does constitute an opposing party's statement under Federal Rule of Evidence 801(d)(2), relying on another Judge Mazzant case.

According to Defendants, in *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, Civil Action No. 4:12-cv-543, 2016 WL 2997120 (E.D. Tex. May 24, 2016), Judge Mazzant found that "the New York Consent Order is admissible as a statement offered against an opposing party." *See* Docket Entry # 529 at p. 14 (citing *Fisher*, 2016 WL 2997120, at *5). Although the defendants in *Fisher* argued they did not consent to the consent order's factual findings and legal conclusions, Judge Mazzant rejected this argument, holding that "while the parties did not specifically state that they consented to the facts and legal conclusions, the parties' stipulation to the agreement signifie[d] their consent." *Fisher*, 2016 WL 2997120, at *5. Therefore, Judge Mazzant found the New York Consent Order was admissible as summary judgment evidence under Federal Rule of Evidence 801(d)(2). *Id*. Again, the Court finds Defendants' arguments persuasive.

---

[4] Defendants argue United My Funds is distinguishable because TravelPass did "not sign[] the Consent Order as to form, not substance." *Docket Entry # 529 at p. 14 (quoting United My Funds*, 470 F. Supp. 3d at 662). According to Defendants, the Consent Decree is not "akin to a summary of out of court allegations made against" TravelPass, but rather, constitutes actions that TravelPass agreed it would take. *Id*. at pp. 14-15.

Finally, noting they have asserted counterclaims against Plaintiffs for trademark infringement, false advertising, and trademark dilution, Defendants argue the FTC evidence is also admissible under the "state of mind" exception in order to show, among other things, TravelPass' knowledge and intent. Docket Entry # 529 at p. 15 (citing *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1055 (9th Cir. 2015) (noting that an FTC Consent Decree could be introduced "for other purposes such as to show notice or knowledge")). Defendants further assert the FTC evidence, including documents TravelPass submitted to the FTC, reflects consumer statements showing actual confusion, and such evidence is admissible not for the truth of the matters asserted, but to demonstrate that the statements were made. *Id.* at pp. 15-16 (citing *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 830 (S.D. Tex. 1999) (evidence of actual confusion is admissible under the state of mind exception)).

Given all these arguments, which the Court has found persuasive, Defendants ultimately argued at the hearing that the Court should wait and see how the FTC evidence is being used to determine whether it constitutes inadmissible hearsay. The Court agrees, finding persuasive the following conclusion made by Six Continents' counsel at the June 16, 2021 hearing:

> The last point I wanted to make is it's important to note that this information is not solely limited to trying to prove our trademark claims, which is what counsel began with. This is about trying to demonstrate the -- the fact that the FTC investigation was started for proper purposes. Not as they allege as part of a horizontal conspiracy. It's important to show that the damages and the valuation of the business that they've put in place is not appropriate. It's important to show knowledge and intent. There may be other things that come up during the trial that make it important for us to be able to put this evidence in. That's why this is really a motion *in limine*.
>
> We should be waiting to see how the evidence is being used because there's no doubt that when it's being used not for the truth of the matter asserted, it's not hearsay. So this is a premature motion. Respectfully, the Court should just dismiss it and allow the plaintiffs to object at trial when this material is being introduced if they think it's being introduced for the wrong reason.

Docket Entry # 579 at 107:16-108:11.

This part of Plaintiffs' motion is denied at this time.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED** that Plaintiffs' Motion to Exclude Evidence of Federal Trade Commission Civil Investigation and Proceedings (Docket Entry # 489) is **DENIED**.

**SIGNED this 12th day of July, 2021.**

_Caroline M. Craven_
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE