IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| TRAVELPASS GROUP, LLC, PARTNER § <br> FUSION, INC. and RESERVATION § <br> COUNTER, LLC § <br> § <br> v. § <br> § <br> CAESARS ENTERTAINMENT § <br> CORPORATION, ET AL. § § | | Case No. 5:18-cv-153-RWS-CMC <br><br> SEALED |

### ORDER ON DEFENDANTS' MOTION TO PURSUE AND COMPEL LIMITED DISCOVERY

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636. The following motion is pending before the Court:

**Defendants' Motion to Pursue and Compel Limited Discovery (Docket Entry # 505).**

The Court, having carefully considered the relevant briefing and hearing arguments of counsel June 16, 2021, is of the opinion the motion should be **GRANTED IN PART AND DENIED IN PART**.

### I. TRAVELPASS' ALLEGATIONS

This is an antitrust case involving an alleged "horizontal conspiracy among the nation's leading hotel chains to limit or eliminate competition for internet ad placements in response to internet searches for hotel-branded keywords, a technique millions of customers use to book hotel rooms online each year." Docket Entry # 468, ¶ 1. Plaintiff TravelPass Group, LLC and its predecessor or related entities, Reservation Counter, LLC, and Partner Fusion, Inc. (collectively, "TravelPass" or "Plaintiffs") are downstream online travel agencies ("OTAs") that sell hotel rooms from different chains to consumers in the United States. *Id.*, ¶¶ 5, 41. According to TravelPass, there

are two types of OTAs: (1) Gatekeeper OTAs, including Expedia and Priceline, that maintain direct relationships with major hotel chains to market hotel inventory online and (2) Downstream OTAs, like TravelPass, that have affiliate agreements with Gatekeeper OTAs for access to hotel inventory. *Id*., ¶¶ 5, 42. TravelPass' business model includes bidding on branded keyword search results to attract hotel consumers to the hotel inventory on its websites. *Id.*, ¶¶ 44, 48.

TravelPass originally filed this antitrust case against eight hotel chains ("Defendant Hotels"). As of this date, TravelPass' claims against Caesars Entertainment Corporation, Hilton Domestic Operating Company, Inc., Hyatt Corporation, Red Roof Inns, Inc., and Wyndham Hotel Group, LLC have been dismissed, leaving only TravelPass' claims against Marriott International, Inc., Choice Hotels International, Inc., and Six Continents Hotels, Inc. (collectively, "Defendants"). According to TravelPass' Amended Complaint, which was filed on May 11, 2021, Defendant Hotels entered into a conspiracy, which had "three interlocking components," "with the purpose and intent of weakening both Gatekeeper and Downstream OTAs by excluding them from effective participation in branded keyword search advertising." *Id*., ¶ 9.

Specifically, TravelPass alleges as follows: (1) "Defendant Hotels and their co-conspirators protected their flanks by entering into a predicate bid-rigging agreement that prevented or eliminated direct competition among themselves for branded keywords;" (2) "Defendant Hotels and their co-conspirators agreed to leverage this security to negotiate more favorable terms with Gatekeeper OTAs like Expedia and Priceline;" and (3) "Defendant Hotels worked together to deny Downstream OTAs like TravelPass cost-effective access to hotel inventory, reducing or eliminating their ability to compete effectively for branded keyword search advertising placement." *Id*., ¶¶ 11-13. TravelPass alleges Defendant Hotels' conspiracy "operated with the goal of limiting or eliminating competition from OTAs." *Id.*, ¶ 14.

The fact discovery deadline was December 30, 2020.[1] Docket Entry # 382. Over five months after the close of fact discovery, Defendants filed — on June 3, 2021 — the current motion to pursue and compel limited discovery. Docket Entry # 505. The motion is about three things, all of which require some background information for context: (1) the supplemental deposition of third party Hyde Valuations, Inc. (which requires background on TravelPass' arbitration with Expedia); (2) handwritten notes from TravelPass' expert David Leathers from the Expedia Arbitration; and (3) communications TravelPass had with the Federal Trade Commission ("FTC") related to the FTC's investigation of TravelPass. Before turning to those three issues, the Court provides some relevant background below.

## II. RELEVANT BACKGROUND

**A.     Expedia Arbitration**

In March of 2017, TravelPass filed suit against Expedia in federal court. *TravelPass Group v. Expedia*, Case No. 2:17-cv-00246-TS (D. Utah March 31, 2017), Docket Entry # 2, attached as Ex. 1 to the Declaration of Genevieve Wallace attached to Non-Party Expedia, Inc.'s Motion to Intervene for the Limited Purpose of Opposing Defendants' Motion to Compel Arbitration Materials (Docket Entry # 443). TravelPass brought claims for trade secret misappropriation and breach of a contractual confidentiality clause, alleging that a former Expedia employee had improperly disclosed confidential TravelPass information to a competitor. *Id.*, ¶¶ 23, 49–71. In separate allegations, TravelPass also claimed Expedia had breached other contract provisions by seeking to restrict TravelPass' keyword bidding in online search advertising. *Id.*, ¶¶ 31–32.

Expedia initiated AAA arbitration to resolve these claims pursuant to the parties' arbitration

---

[1] The expert discovery deadline was May 4, 2021. Docket Entry # 457. The pretrial conference is set for October 5, 2021, with jury selection and trial scheduled October 25, 2021. *Id.*

agreement. An arbitral panel took jurisdiction, and the Utah court stayed TravelPass' federal suit.[2] According to Expedia,[3] from 2017 through 2020, Expedia and TravelPass conducted the private Arbitration under "stringent confidentiality protections that both the parties and the arbitral panel agreed were necessary due to the sensitive subject matter and putative trade secrets at issue in the arbitration." Docket Entry # 443 at p. 1.

During the arbitration, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ TravelPass subsequently settled the dispute with Expedia.

**B.   FTC investigation**

Meanwhile, in December of 2017, the FTC publicly filed a complaint against TravelPass.[4] According to Plaintiffs' Motion to Exclude Evidence of Federal Trade Commission Civil Investigation and Proceedings, "TravelPass simultaneously enter[ed] into a voluntary stipulation and consent order, in which it admitted no liability and paid no fines." Docket Entry # 489 at p. 2. According to Defendants' response to that motion, "the 20-year Consent Decree enjoining TravelPass from misrepresenting itself as being affiliated with any hotel, failing to disclose material information, including that customers had reached a third-party travel agency and not the hotel itself,

---

[2] The Utah court later dismissed the federal suit with prejudice in August 2020, following the resolution of the Expedia Arbitration.

[3] On March 20, 2021, the Court entered an order granting Expedia's motion to intervene, allowing Expedia to intervene for the limited purpose of opposing Defendants' motions to compel arbitration materials, which the Court discusses below. *See* Docket Entry # 458.

[4] In briefing related to Plaintiffs' separate Motion to Exclude Evidence of Federal Trade Commission Civil Investigation and Proceedings, TravelPass asserts the FTC began an investigation of TravelPass in 2015, "as a result of a lobbying campaign spearheaded by the American Hotel & Lodging Association." Docket Entry # 489 at p. 1. In its response to Plaintiffs' motion to exclude, Defendants assert the FTC began investigating TravelPass in response to the magnitude of consumer complaints submitted to the Better Business Bureau about TravelPass. Docket Entry # 529 at p. 7.

and misrepresenting the material terms of any travel product, including the nature of any refund or cancellation policies. . . . Additionally, the FTC required TravelPass to establish certain call center monitoring procedures.*" Docket Entry # 529 at p. 8. Defendants further assert that TravelPass, in response to the FTC investigation, made certain changes to its marketing practices that negatively impacted its business. *Id*. at pp. 8-9.

**C.    Procedural background in this litigation**

**1.    Defendant Hotels' August 23, 2019 motion to compel FTC and Expedia documents**

On August 23, 2019, Defendant Hotels jointly moved to compel TravelPass to produce the following two sets of documents, which Defendant Hotels argued bear directly on the core harm and damages that TravelPass alleges here: (1) documents that TravelPass produced to the FTC during the FTC's investigation into TravelPass' false, misleading, and deceptive online advertising practices (the "FTC Documents"), and (2) the documents TravelPass produced in its litigation and arbitration with Expedia (the "Expedia Documents"). TravelPass objected to Defendant Hotels' motion, while at the same time acknowledging some of the electronically-stored information might be relevant. TravelPass' main objection was Defendant Hotels' attempt to circumvent the Court's E-Discovery Order by refusing to provide custodians, search terms, a relevant time period, or otherwise comply with the terms of the order as related to the disputed documents. *See* Docket Entry # 184 at p. 2. TravelPass represented it would comply with any ESI requests that conformed with the parties' bargained-for E-Discovery Order, but TravelPass insisted Defendants must first seek the requested documents through the ESI discovery procedure set forth in the E-Discovery Order. Docket Entry # 256; *see also* Docket Entry # 184 at p. 5 ("TravelPass has acknowledged that some of the Requested Documents may be relevant, and that TravelPass will search for and produce relevant documents contained in those sets of documents in accordance with the terms of the E-

Discovery Order.").

Noting TravelPass' representations, the undersigned denied Defendant Hotels' Joint Motion to Compel on January 16, 2020, concluding as follows:

> Here, the Court declines to make a determination at this time whether all of the requested electronic documents previously produced are relevant to the claims or defenses in this case. Plaintiffs concede much of it may be. However, the Court finds that an informal request that seeks wholesale duplicates of discovery produced in other litigation is improper as failing to make the requisite showing of relevance. Defendants are not entitled to the wholesale reproduction of all of the FTC Documents and Expedia Documents simply because there may be overlap between the issues in those cases and those in this case. *In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1. Instead, Defendants must serve requests for production on TravelPass in accordance with the Federal Rules and as anticipated by the E-Discovery Order negotiated by the parties and entered by the Court. *Id.* at *2.

Docket Entry # 262 at pp. 12-13.

**2. Defendants' subsequent motions to compel Expedia documents**

In mid-December 2020, shortly before the close of fact discovery in this case, Defendants discovered purported deficiencies in TravelPass' document production when Defendants deposed TravelPass' CEO, Ryan McCoy. *See* Docket Entry # 505 at p. 4 (███████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████ Defendants filed their first motion to compel on December 30, 2020. In their first motion, Defendants sought documents ████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████.[5] In opposing the motion to compel, TravelPass represented to the Court that ███████████████████████

---

[5] Defendant Hotels' first motion also moved to compel the production of settlement agreements with former defendants in this case. However, Defendant Hotels later withdrew that portion of their first motion to compel. *See* Docket Entry # 425.

██████████████████████████████████████

████

On February 11, 2021, Defendants filed their second motion to compel TravelPass' production of Expedia arbitration materials. Docket Entry # 441. The second motion pertained to the categories of documents which TravelPass originally agreed to produce, but which "TravelPass now refuses to produce . . . because Expedia objects on the basis that the materials are confidential and protected from disclosure." *Id.* at p. 1. In their second motion, Defendants moved for an order compelling TravelPass to produce the following: (1) transcripts (including exhibits) of the depositions of TravelPass fact and expert witnesses taken in the Expedia Arbitration and any additional deposition transcripts (including exhibits) in which keyword bidding restrictions were discussed, and (2) the expert report of Jason Hachkowski offered in the Expedia Arbitration and any corresponding backup and data.

On May 11, 2021, the Court granted in part and denied in part Defendants' motions to compel. *See* Docket Entry # 467. In a thirty-page order, the undersigned first found good cause to re-open fact discovery as to the discovery sought by Defendants in their motions to compel. *Id.* at pp. 15-16. Turning to the substance of the motions, the Court ordered TravelPass to produce to Defendants the following: (1) TravelPass fact or expert witness deposition testimony (and exhibits) from the Expedia Arbitration; (2) the expert report of Jason Hachkowski offered in the Expedia Arbitration; (3) any TravelPass responses to interrogatories or request for admission discussing damages; and (4) the Hyde valuation.

At the June 16, 2021 hearing, counsel for Defendant Choice stated TravelPass produced over ████████████████████████ that relate directly to the issues in this case, documents which should have produced earlier and which have necessitated the filing of the current motion to pursue

7

and compel limited discovery. *See* Docket Entry # 579 at 58:17-62:13.

### III. CURRENT MOTION TO PURSUE AND COMPEL

Defendants request the Court re-open fact discovery for the limited purpose of pursuing and compelling the following: (1) a Rule 30(b)(6) deposition of Hyde Valuations, Inc. ("Hyde"); (2) any unproduced notes of David Leathers from the Expedia Arbitration; and (3) any communications with the FTC, including an unredacted copy of the FTC Letter dated November 20, 2017. Defendants assert this motion is necessitated by Plaintiffs' "practice of selective disclosures and frivolous assertions of privilege and arbitration confidentiality to shield documents that are damaging to its case. To remedy the clear prejudice resulting from this sanctionable conduct, Defendants seek to pursue and compel limited additional discovery." Docket Entry # 505 at p. 1.

In response, TravelPass asserts Defendants fail to show good cause to re-open fact discovery. Specifically, TravelPass argues it has not impeded discovery in this case; Defendants have not been diligent; the requests have already been adjudicated or denied by the Court; and/or the discovery sought is irrelevant or unnecessary. TravelPass states the "Hyde Request and the FTC Communications Request relate back to discovery disputes from the inception of this case," and the "Leathers Arbitration Notes Request was, in fact, already considered and denied by this Court in" the May 11, 2021 Order. Docket Entry # 536 at p. 2.

### IV. APPLICABLE LAW

Under Federal Rule of Civil Procedure 16(b), federal courts have the clear authority to control and expedite the discovery process through a scheduling order. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). Consistent with the authority vested in the district court by Rule 16, the trial court is granted broad discretion to preserve the integrity and purpose of such pretrial orders. *See id.* (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)); *see also*

*Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) (affording district courts a great deal of deference in determining whether to modify scheduling orders especially where the record suggests the movant repeatedly demonstrated a lack of diligence). Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner. *Gauthier v. Union Pac. R.R. Co.*, Civil Action No. 1:07-CV-12 (TH/KFG), 2009 WL 10676647, at *3 (E.D. Tex. Mar. 10, 2009) (citing *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 495 (S.D. Tex. 2009) (citations omitted)).

Federal Rule of Civil Procedure 16(b)(4) provides that deadlines in a schedule "may be modified only for good cause and with the judge's consent." The Fifth Circuit has "interpreted Rule 16(b)(4)'s 'good cause' standard to require the movant to 'show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.,* 514 Fed. Appx. 483, 2013 WL 657676, at *5 (5th Cir. Feb. 22, 2013) (quoting *S & W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA,* 315 F.3d 533, 535 (5th Cir.2003)).

The Fifth Circuit has stated four factors trial courts must consider when determining whether good cause exits to allow a deviation from the court's scheduling order: (1) the explanation for the failure to meet the deadline; (2) the importance of the modification of the deadline; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *Reliance Ins. Co. v. The Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997); *Geiserman*, 893 F.2d at 791.

In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule. *See Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan.1995); *see also Smith v. BCE, Inc.*, 225 Fed. Appx. 212, 217 (5th Cir. 2007). The party's

9

explanation for seeking relief from the schedule must demonstrate that it could not have met the deadline despite its diligence.

## V. GOOD CAUSE ANALYSIS

### A.      Deposition of Hyde

Defendants first seek to re-open fact discovery in order to seek an order allowing them to pursue a Rule 30(b)(6) deposition of a third party, Hyde Valuations, Inc., relating to the Hyde valuations produced by TravelPass in response to the May 11, 2021 Order. Defendants assert the Hyde valuations "eviscerate TravelPass' damage claim" because ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

TravelPass contends Defendants have not been diligent, pointing out Defendants were not prevented from seeking the Hyde deposition during the discovery period. TravelPass further points out it "made routine privilege objections relating to certain Hyde documents" on March 17, 2020. Docket Entry # 536 at p. 2 (citing Ex. A). According to TravelPass, after Defendants challenged the Hyde privilege log entries on April 29, 2020, TravelPass defended and maintained its Hyde privilege objections on June 30, 2020, more than one year ago. *Id.* (citing Exs. B, C). TravelPass states Defendants also subpoenaed Hyde around the same time, but "when Hyde asserted the same privilege claim that Plaintiffs did on May 22, 2020 . . . , Defendants remained silent and never sought to compel production from Hyde." *Id*. at p. 7 (citing Ex. E). As noted by TravelPass, Defendants did not raise the issue again until December of 2020, ultimately moving to compel in January of 2021. *Id.*

Although TravelPass asserts Defendants should have challenged TravelPass' assertion of privilege earlier, Defendants state it was not until Mr. McCoy's deposition in December of 2020 that

10

Defendants understood ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Docket Entry # 579 at 63:4-20 (further stating Defendants did not know at that point that the privilege claim was baseless). Defendants state they then promptly filed their first motion to compel, which the Court ruled on in May of 2021. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendants assert TravelPass' subsequent production of the Hyde valuations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ According to Defendants, after they received TravelPass' recent production of the "inappropriately withheld documents," they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendants further explain they could not have noticed the deposition of Hyde prior to May 11, 2021 because Defendants did not have the document or know about the valuation. Docket Entry # 579 at 63:22-25. According to Defendants, they "moved quickly to try to move forward with this deposition now that [they] have the information that [they] should have had two years ago to proceed with the deposition." *Id.* at 64:1-5.

Defendants attempt to shift the focus to TravelPass, arguing TravelPass ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id* at 64:6-11 ("Just like with the FTC communications . . . TravelPass' only argument here is that defendants should have caught on to the fact that TravelPass was playing games with privilege

11

earlier on in the case, but parties have to assume that the other side is engaging in good faith.").

According to Defendants, any privilege was waived by TravelPass' disclosure to Expedia.

> However, at the hearing, TravelPass explained as follows:
>
> With regards to the false claim of privilege . . ., that is unequivocally not the case. We asserted privilege because -- under work-product and attorney-client privilege in good faith. [Defendants' counsel] . . . believes that our assertion of privilege in this case is false and misleading to the Court    again, very strong words -- ███████████████████████████████████████████████████████████████████. But there is a couple of distinctions he fails to make. Number one, work product -- he says waiver -- he says -- the arbitration -- the privileged issue was decided. All right. Well, first of all, in an arbitration, there is no authority that an interlocutory decision by a private panel in a private confidential arbitration is an adjudication for res judicata or issue preclusion purposes of privilege. In fact, it's the opposite.
>
> Generally speaking, arbitration decisions are only given any kind of weight like that when it's reduced to a final award. Two, work product is not normally waived by disclosure. It's not automatically waived by disclosure while attorney work product may be. . . .
>
> It is an open question in our case law authority. And, apparently, they would agree because they've cited nothing to the contrary about in these factual circumstances, if privilege is actually destroyed, both attorney-client and work-product -- when you have an arbitration versus this proceeding -- but at best -- even -- I mean, I should say at worst, our argument on this point is a good faith extension of the law because it is unclear and because it's -- what was ultimately disclosed was not for all purposes. It was in a private arbitration that had a robust protective order in which Expedia could not, therefore, do anything else with that document other than litigate the case.
> So under those circumstances, I have -- I am not aware of any authority that says that we couldn't have asserted privileges in this case. He has cited none. So there's no falsity here. This is litigation and adversarial positions that are being taken, but there's no bad faith here. And he can't say there's bad faith under 37, so he just says it out loud without consequence in a Rule 16 motion.

Docket Entry # 579 at 83:21-85:24.

Having considered the parties' positions, the facts remains, as urged by TravelPass, that "nothing prevented Defendants from challenging Plaintiffs' and Hyde's privilege claims during the discovery period or sending Hyde a deposition subpoena during the discovery period." Docket Entry

# 536 at p. 8 (emphasis removed). Even putting aside the issue of whether Defendants were diligent, the Court is still not convinced of the importance of the request, especially considering TravelPass has already offered Mr. Leathers for a supplemental deposition to discuss the Hyde documents. *Id.* at p. 8, n. 6. As further pointed out by TravelPass, even if the Court were to grant Defendants' request, it would merely allow Defendants to serve a deposition subpoena on third party Hyde, potentially causing "further unnecessary satellite litigation, *e.g.*, a motion to quash." *Id*.

Having carefully considered the relevant factors, including the fast-approaching firm trial setting in October, the Court does not find good cause exists to re-open fact discovery at this late date in order to allow Defendants to pursue a deposition from third party Hyde. However, the Court does find good cause to re-open discovery for the limited purpose of allowing a two-hour supplemental deposition of Mr. Leathers to discuss the Hyde documents, as offered by TravelPass. Otherwise, this part of Defendants' motion is denied.

### B.     David Leather's notes from the Expedia Arbitration

According to Defendants, after the Court ordered the production of transcripts from the Expedia Arbitration, Defendants saw there were additional notes from David Leathers that were used as an exhibit to his deposition in that matter. Docket Entry # 579 at 65:6-9. As part of the current motion, Defendants seek any additional notes of David Leathers from the Expedia Arbitration that have not been produced. Defendants assert the notes are highly relevant and other notes exist that have not been produced.

TravelPass argues the Court's May 11, 2021 Order has already resolved this issue. Defendants submit otherwise. *See* Docket Entry # 579 at 66:6-14 ("What we were seeking [in the earlier motion] as defendants is that spreadsheet that did the math so we could understand how the

calculations were done. That motion was not about notes of communications that Leathers might have taken or any other material. It was about the analyses and data supporting those calculations. It wasn't seeking full-blown Rule 26 disclosures.").

In ruling on the issue of backup data in its May 11, 2021 Order, the Court reasoned as follows:

> The Court grants Defendants' motion to compel production of TravelPass fact or expert witness deposition testimony (and exhibits) from the Expedia Arbitration, as well as any TravelPass responses to interrogatories or request for admission discussing damages. However, with regard to Defendants' request for all deposition transcripts of Expedia witness deposition testimony (and exhibits) from the Expedia Arbitration that relates to keyword bidding, the Court has concerns with the proportionality of such request and thus denies that part of Defendants' second motion to compel.
>
> The Court grants Defendants' motion to compel the expert report of Jason Hachkowski offered in the Expedia Arbitration. However, the Court denies Defendants' motion to compel the corresponding backup material and data of Hachkowski's report. Similarly, the Court denies Defendants' request for the backup material and data supporting TravelPass' Arbitration expert David Leathers.
>
> According to TravelPass, its damages expert specifically controlled for other damage factors, including the separate damages that could have been attributable to the Expedia trade secret action. TravelPass argues Defendants were able to explore any aspects of Mr. Leather's report in his deposition, but they are not "entitled to a full Rule 26 'expert disclosure' from a separate litigation, with separate claims, and alleging separate harms." Docket Entry # 437 at pp. 2-3 (citing *Cartier, Inc., et al. v. Four Star Jewelry Creations, Inc.*, Civil Action No. 01 Civ.11295 (CBM), 2003 WL 22227959, *3 (S.D.NY. Sept. 26, 2003) ("Rule 26(b) does not mandate the disclosure of any additional reports that the expert may have prepared" nor does Rule 26 "tolerate discovery requests 'based on pure speculation or conjecture'")).
>
> The Court is not convinced TravelPass is obligated to produce the backup material related to the Expedia reports. Nor is the Court persuaded Defendants need the supporting data and documents from the Expedia reports in order to determine whether Mr. Leathers adequately 'controlled for' the damages he believes were caused by Expedia.

Docket Entry # 467 at pp. 21-23 (internal footnotes omitted).

TravelPass has represented it has produced to Defendants all notes that were created in connection with Mr. Leathers' work in this case. Although Defendants now seek to re-open fact discovery in order to seek any notes Mr. Leathers created in connection with his work in the Expedia Arbitration, the Court agrees with TravelPass this issue was encompassed in the Court's denial of Defendants' broader request for the backup material and data supporting TravelPass' Arbitration expert David Leathers. In so ruling, the Court indicated it agrees with TravelPass' position that Defendants are not entitled to a full Rule 26 expert disclosure from a separate litigation. Accordingly, Defendants' motion to re-open fact discovery for the production of additional notes from the Expedia Arbitration expert report is denied.

**C.    FTC communications**

Finally, Defendants seek to re-open fact discovery to move to compel the production of FTC communications, including an unredacted copy of the FTC Letter dated November 20, 2017. According to Defendants, among the ▓▓▓▓▓▓▓▓▓▓▓▓ TravelPass produced from the Expedia Arbitration was a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Docket Entry # 579 at 59:7-16. Defendants state the only way they found out about TravelPass' failure to comply with its discovery obligations was when TravelPass mistakenly "attached to its motion to exclude FTC evidence from trial a highly relevant FTC communication in redacted form that they had never produced." *Id*. at 59:20-60:1. Defendants state the letter redacts all of the things TravelPass told the FTC that it would do to address the FTC's concerns regarding TravelPass confusing customers, and that information is important because "TravelPass' damages

15

expert ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ *Id*. at 60:1-12.

In response, TravelPass asserts it produced ███████ FTC documents during discovery, and the redacted version of the FTC letter originally attached to TravelPass' motion to exclude was actually produced by Expedia. TravelPass states Defendants used the FTC letter in a deposition of TravelPass' general counsel, Austin Lowe, during discovery; yet, Defendants never complained about redactions until after discovery closed. Docket Entry # 579 at 73:1-18.

At the hearing, counsel for Defendant Choice argued as follows:

> TravelPass also argues in its opposition brief that the redacted version of the letter was actually produced by Expedia, and that's exactly the problem. This is squarely relevant. It should have been produced by TravelPass. We shouldn't have to get it in redacted form and buried in the middle of a 500-page document from Expedia. And we don't know what else is out there. The redacted material is squarely relevant to evaluating the damages claim in this case, and there could be other documents out there like those. We''re not asking, your Honor -- we understood the motion was denied for wholesale production of everything related to the FTC inquiry. What we're asking for here is the communications back and forth like the letter that was submitted attached to that motion.

Docket Entry # 579 at 61:9-21.

The Court is of the opinion the FTC letter is relevant and should have been produced by TravelPass, regardless of whether it was produced by Expedia in redacted form. Although the Court finds good cause to re-open fact discovery for the limited purpose of compelling TravelPass to produce to Defendants an unredacted copy of the FTC Letter,[6] the Court does not find good cause

---

[6] The Court notes TravelPass' argument at the June 16, 2021 hearing that the redacted portion of the FTC letter would raise Rule 408 concerns. *See* Docket Entry # 579 at 77:15-20 ("It's inadmissible, it's hearsay, and it's 408, which is really the subject of our . . . second motion."). As noted by the Court in its Order Denying Plaintiffs' Motion to Exclude, these issues can be raised at a later date.

to re-open fact discovery in order to compel TravelPass to produce any other communications with the FTC. Accordingly, this part of Defendants' motion is granted in part and denied in part.

## VI. CONCLUSION

Based on the foregoing, it is

**ORDERED** that Defendants' Motion to Pursue and Compel Limited Discovery (Docket Entry # 505) is **GRANTED IN PART AND DENIED IN PART** as specified herein. It is further

**ORDERED** that within five days from the date of entry of this Order, TravelPass shall produce to Defendants an unredacted copy of the FTC Letter.

**SIGNED this 12th day of July, 2021.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE