**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| **TRAVELPASS GROUP, LLC,**<br>**PARTNER FUSION, INC.,**<br>**RESERVATION COUNTER, LLC,**<br><br>   **Plaintiffs,**<br>**v.**<br><br>**MARRIOTT INTERNATIONAL, INC.,**<br><br>   **Defendant,** | Civil Action No. 5:18-cv-153-RWS-CMC<br><br>**JURY TRIAL DEMANDED** |

**JOINT PRE-TRIAL ORDER**

This cause came before the court at a pre-trial management conference held on October 20, 2021, pursuant to the Court's Docket Control Order, Local Rule CV-16, and Rule 16 of the Federal Rules of Civil Procedure.

**A.** **COUNSEL FOR THE PARTIES**

 a. Plaintiffs/Counterclaim Defendants:

   Christopher J. Schwegmann (***Lead Attorney***)
   State Bar No. 24051315
   Samuel B. Hardy, IV
   State Bar No. 24074360
   Christopher W. Patton
   State Bar No. 24083634
   Ruben A. Garcia
   State Bar No. 24101787
   Cory C. Johnson
   State Bar No. 24046162
   Rebecca L. Adams
   State Bar No. 24098255
   Barira Munshi
   State Bar No. 24095924

**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
**SCHNEIDER WALLACE COTTRELL KONECKY, L.L.P.**
2000 Powell Street, Suite 1400
Emeryville, California 94608
(415) 421-7100 Telephone
(415) 421-7105 Facsimile

b.   <u>Defendant/Counterclaim Plaintiff Marriott International, Inc.:</u>

Jennifer H. Doan
Texas Bar No. 08809050
Cole A. Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Rd., Ste. 100
Texarkana, Texas 75503
Tel: (903) 255-1000
Fax: (903) 255-0800

Shari Ross Lahlou (*pro hac vice*)
Thomas J. Miller (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 261-3300
Fax: (202) 261-3333

Jeffrey L. Poston (*pro hac vice*)
David Ervin (*pro hac vice*)
Britton Davis (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

Jordan L. Ludwig (*pro hac vice*)
CROWELL & MORING LLP
515 South Flower Street, Floor 40
Los Angeles, California 90071
Telephone: (213) 622-4750

## B.      STATEMENT OF JURISDICTION

Jurisdiction in this case is based on Title 28 U.S.C. §§ 1331, 1337, and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22 of the Sherman Act in that the Plaintiffs bring this action under Section 1 of the Sherman Act, 15 U.S.C. § 1.

Jurisdiction is not disputed.

## C.      NATURE OF ACTION

This is an antitrust case involving an alleged horizontal conspiracy among the nation's leading hotel chains to eliminate competition for online advertising in response to searches for hotel-branded keywords, a technique millions of customers use to book hotel rooms online each year. TravelPass asserts claims under Sections 1 of the Sherman Act based upon Marriott's alleged participation in this conspiracy.

TravelPass seeks damages, treble damages, costs of the action, reasonable attorneys' fees, expert fees and prejudgment interest and post-judgment interest.

Marriott denies the claims made by TravelPass, and denies that TravelPass is entitled to any monetary or non-monetary relief.

Marriott has asserted counterclaims against TravelPass alleging that TravelPass's marketing, sales, and promotional activities are unlawful, misleading, and deceptive and constitute trademark infringement and false advertising in violation of various federal and state laws.

Marriott seeks damages, punitive damages, costs of the action, reasonable attorneys' fees, expert fees and prejudgment and post-judgment interest.

TravelPass denies the counterclaims made by Marriott.  TravelPass affirmatively asserts, *inter alia*, that Marriott's claims are barred by the doctrines of fair use and laches, and denies that Marriott is entitled to any monetary or nonmonetary relief.

**D.**     **CONTENTIONS OF THE PARTIES**

By providing these contentions, the parties do not waive any of their pending or anticipated motions for summary judgment, motions to strike, motions *in limine*, or motions to exclude expert testimony.

a.     Plaintiffs' Antitrust Contentions

Plaintiff TravelPass Group, LLC and its related entities, Reservation Counter, LLC and Partner Fusion, Inc. (together referred to as "TravelPass") contend that the Marriott and seven of the United States' largest hotel brands conspired to eliminate search-engine-driven competition for online advertising space and to boycott any companies who would not go along with their plan. TravelPass further alleges that, over time, the conspiracy divided the market for online search advertising among the co-conspirator hotels and allocated online advertising territory so that these hotel brands no longer had to compete for customers with one another or with online travel agencies.

This case is about how competition for hotel customers takes place in the modern internet age. TravelPass is an online travel agency, or OTA, that sells hotel room inventory online. TravelPass contends that search engines like Google allow hotel brands and OTAs to advertise rooms online by auctioning space in the search results page. TravelPass contends that when a user types keywords into a search engine, the search engine auctions off advertisement space on the search results page to whoever bids the most for the ad space associated with those keywords.

TravelPass contends that, as one of the major "affiliate" OTAs, TravelPass sold hotel rooms online by bidding on branded keywords in online search auctions.

TravelPass contends that the internet changed the how hotels compete for customers because, before the internet, hotels rarely competed head-to-head on price or amenities. TravelPass contends that the rise of search engines and OTAs provided customers with better information about hotel-room options and led to more price competition among hotels. TravelPass contends that the OTAs quickly mastered online search engine marketing, and by 2010 the hotel brands realized that they had fallen behind in their ability to compete online. TravelPass contends that, as a result, Marriott and its co-conspirators realized that it would cost too much to try to compete with OTAs online if each acted alone. TravelPass further contends that, because of this, the hotels entered into a "gentlemen's agreement" to work together to stop the OTAs success without having to compete with one another or to make the investments necessary to compete online by acting alone.

TravelPass contends that, as part of this "gentlemen's agreement," Marriott and its co-conspirators agreed that they would not compete with one another in search advertising for branded keywords. TravelPass contends that the hotel brands agreed to not participate in any search engine auction that involved any other hotel brand. TravelPass further contends that Marriott and its co-conspirators also agreed to cut off inventory and advertising rights to TravelPass and other OTAs who refused to participate in the conspiracy. TravelPass contends that, in this way, the conspiracy artificially reduced online advertising auction prices. TravelPass also contends that the conspiracy also stopped consumers from seeing (1) competitive ads from competing hotels brands and (2) OTA websites like TravelPass' that offer direct price competition among those same brands.

TravelPass contends that the conspiracy destroyed TravelPass's business by forcing it to stop branded search engine advertising and then, when TravelPass refused, by cutting TravelPass off from its primary sources of inventory. TravelPass further contends that the restrictions imposed by the hotel brands as part of the conspiracy caused both its profits and overall business value to plummet.

TravelPass contends that Marriott's conduct violates Sections 1 of the Sherman Act. TravelPass also contends that, as a result of Marriott's unlawful conduct, it has sustained and is entitled to recover damages for the harm caused by Marriott's anticompetitive behavior, including in the form of lost profits or diminished business value.

TravelPass further contends that, pursuant to Section 4(a) of the Clayton Act, it is entitled to recover treble damages and the cost of suit, including reasonable attorneys' fees and expert fees. TravelPass further contends that it is entitled to pre-judgment and post-judgment interest.

b.    Defendant's Antitrust Contentions

Marriott contends that TravelPass's allegations of conspiracy are baseless, and all of Marriott's actions were lawful.  Competition in the hotel industry is robust, and consumers have more ways than ever before to shop for hotel rooms online and to compare available options and prices.  Marriott further contends that TravelPass spent years intentionally breaching its contracts and simply could not keep up with more experienced and better-funded companies in a rapidly innovating industry.  Marriott further contends that TravelPass seeks to blame the hotels for its inability to compete in the free market.

Marriott contends that it acted independently with respect to each of the three parts of TravelPass's alleged conspiracy: (1) its decision not to bid on competitors' trademarks; (2) its decision to include and enforce provisions in its OTA contracts that restrict OTAs from bidding

6

on Marriott's trademark keywords since 2003; and (3) its decision to exercise its contractual right to terminate TravelPass's sublicense from certain OTAs to sell Marriott hotel rooms.

Marriott contends that no actual agreement existed among the hotels not to bid on other hotels' trademarks.  Marriott further contends that it has had a policy in place since 2003—which is six years before TravelPass existed and seven years before the alleged conspiracy supposedly started—that it would not bid on competitors' keywords.  Marriott contends that it made this initial decision to protect Marriott's brands and reputation and ensure that consumers do not have a poor search experience by receiving ads that are not responsive to their searches.  Marriott further contends that it generally does not make good business sense for it (and likely any hotel) to bid on another hotel's trademarks as keywords in paid search, in part because of the way that Google's advertising auctions work.  Google's platform makes any such advertisements, which are highly unlikely to result in a booking, very expensive.

Marriott contends that since 2003, it has negotiated provisions in contracts with OTAs to prohibit OTAs from bidding on Marriott's branded keywords.  Marriott further contends that it independently and rationally decided to focus OTAs' marketing efforts on brand-agnostic customers that were not already looking for Marriott.  Marriott further contends that most OTAs have grown and thrived under this relationship.

Marriott contends that it independently instructed Expedia to terminate TravelPass's sublicense to receive Marriott rooms.  Marriott further contends that it instructed Expedia to terminate TravelPass's sublicense only after years of receiving complaints from Marriott guests that TravelPass was deceiving guests by falsely holding itself out as Marriott and failing to disclose it was a third-party agency not associated with Marriott.  Marriott further contends that it attempted to work with TravelPass in a manner that would reflect positively on the Marriott brand and align

with Marriott's distribution strategy, but TravelPass refused to comply with its contractual obligations.

Marriott contends that TravelPass, as a purchaser of keywords in online auctions, would not be harmed by and cannot recover from any conspiracy among hotel chains not to bid on one another's branded keywords.  Marriott further contends that consumers conducting branded keyword searches for hotel rooms are presented not only with paid search and organic results, but since 2014, have been presented with a wealth of information through Google Hotel Ads, which contains OTA and metasearch advertisements, among others.  Marriott contends that there is no evidence that there has been any harm to competition resulting from the alleged conspiracy and that competition is more vibrant than ever.

Marriott contends that TravelPass continues operating today with ample access to inventory, continues bidding on branded keywords, and continues pretending to be Marriott and other hotels.  Marriott further contends that TravelPass has ample sources of hotel inventory, many of which are more profitable to TravelPass than its original inventory sources.  Marriott further contends that to the extent TravelPass's business slowed down, that was due to other factors unrelated to the alleged conspiracy, including increased competition from other downstream OTAs and the rise of booking channels in which TravelPass did not compete or innovate such as mobile apps and metasearch, among others.

Marriott contends that there has been no violation of Section 1 of the Sherman Act for which TravelPass is entitled to recover damages.  Marriott further contends that even if TravelPass could prove a violation, it has suffered no damages caused by the conduct alleged.

c.     <u>Counterclaim Plaintiff's Trademark Contentions</u>

Marriott contends that TravelPass has intentionally engaged, and continues to engage, in infringing, deceptive, and misleading conduct, masquerading as Marriott branded properties to dupe consumers into booking hotel rooms through TravelPass.  Marriott contends that it made TravelPass aware of its infringing, deceptive, and misleading conduct at least as early as 2012, and proceeded over the years to request that TravelPass change its conduct and comply with Marriott's Marketing Guidelines.  Marriott's requests went unanswered, leaving Marriott no choice but to enforce its longstanding trademark rights in this case.

Marriott contends that TravelPass's use of Marriott's federally registered trademarks in connection with TravelPass's intentionally generic-named websites—"Reservation Desk" and "Reservation Counter"—went and goes far beyond that of fair use by an innocent reseller.  Marriott contends that TravelPass exploits Marriott's sterling reputation and copious goodwill by using Marriott's trademarks in deceptive online ads, deceptive landing pages, and deceptive call center scripts to trick consumers into believing that they are booking with the "reservation desk" or "reservation counter" of a Marriott-branded hotel, and not with a third party.  Marriott contends that TravelPass's exploitation of Marriott's trademarks have harmed the overall goodwill and positive brand association that Marriott has worked for close to a century to establish.

Marriott contends that TravelPass falsely advertises its hotel booking services, making promises with no basis in reality or any substantiation.  Marriott further contends that TravelPass's (1) offers of the best or lowest prices and unqualified savings claims with specific dollar amounts and percentages, (2) encouragement that consumers can book direct through its generic website, (3) promises it abides by Marriott's cancellation policies, and (4) collection of Marriott Rewards points for travel booked with TravelPass, are false and misleading.

Marriott contends that TravelPass's intentional exploitation of Marriott's trademarks and hollow promises related to Marriott hotel room bookings have led to voluminous consumer complaints detailing rampant consumer confusion and deception, resulting in lasting harm to Marriott, its brands, its goodwill, and its reputation.

       d.    <u>Counterclaim Defendants' Trademark Contentions</u>

TravelPass is an "affiliate" OTA of larger online travel agencies like Expedia and Priceline. TravelPass contends that, before the conspiracy alleged in this case, it obtained access to hotel brands' room inventory via these "gatekeeper OTAs." TravelPass contends that it obtains small portion of its hotel room inventory through global distributors and wholesale suppliers.

TravelPass contends that, to market hotel rooms on its websites, it used branded keyword advertising to draw consumers to its websites. TravelPass further contends that it invested tens of millions of dollars in technology capabilities, marketing expertise, developing data sets and bidding strategies based on its bookings, and branded keyword search advertising campaigns to offer affordable hotel-room options to consumers. TravelPass further contends that, as a re-seller of Marriott's rooms, it must use Marriott's trademarks to refer to, promote, and describe Marriott's hotel rooms in its search engine advertising and on its websites. TravelPass contends that it has a fair use right to use Marriott's trademarks in the manner in which it uses them. TravelPass further alleges that its use of the trademarks is not likely to cause confusion.

TravelPass further contends that Marriott never raised once raised the issue of TravelPass's use of Marriott's trademarks until after the antitrust claims were filed in this case, and that Marriott's claims are therefore barred by the doctrine of laches and equitable estoppel. TravelPass contends that Marriot and its co-conspirators used "trademark protection" as an after-the-fact excuse to cover for their real goal of excluding TravelPass from the market because it's success at

search engine marketing threatened the hotel brands' "gentlemen's agreement." TravelPass contends that its efforts to avoid detection from the Marriott and its co-conspirators were legitimate marketing practices adopted to head off the hotel brands' attack on OTAs like TravelPass. TravelPass further contends that, although some consumers complained about TravelPass's practices, such complaints were minimal when compared to TravelPass's millions of customer transactions and when compared with the number of complaints made against the larger OTAs including Expedia.

TravelPass further contends that Marriott's request for equitable injunctive relief is barred by the doctrine of unclean hands.

## E.   STIPULATIONS AND UNCONTESTED FACTS

1.   TravelPass is an Online Travel Agency that began operations in 2009.

2.   The following U.S. federal trademark registrations are valid, subsisting, protectable, and owned by Marriott on the United States Patent and Trademark Office's Principal Register:

| Mark | Federal Registration No. | Relevant Services | Date of First Use in U.S. Commerce |
|------|------|------|------|
| MARRIOTT | 0899900 | HOTEL AND RESTAURANT SERVICES | At least as early as July 1960 |
| **Marriott** | 0904029 | HOTEL AND RESTAURANT SERVICES | At least as early as July 1960 |
| **Marriott** | 2504099 | HOTEL, RESTAURANT, CATERING, BAR AND LOUNGE SERVICES; PROVISION OF FACILITIES FOR MEETINGS, CONFERENCES AND EXHIBITIONS; RESERVATION SERVICES | At least as early as Apr. 10, 1988 |

| | | FOR HOTEL ACCOMMODATIONS | |
|---|---|---|---|
|  | 4539498 | Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as Jun. 17, 2013 |
| JW MARRIOTT | 3639551 | hotel services; restaurant, catering, bar and lounge services; resort and lodging services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations | At least early as Feb. 28, 1984 |
| JW MARRIOTT | 2393255 | HOTEL, RESTAURANT, CATERING, BAR AND LOUNGE SERVICES; PROVISION OF FACILITIES FOR MEETINGS, CONFERENCES AND EXHIBITIONS; MAKING HOTEL [ RESERVATION ] * RESERVATIONS * FOR OTHERS | At least as early as Feb. 1984 |
|  | 3857699 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as May 15, 2009 |

| | | | |
|---|---|---|---|
| DELTA HOTELS | 4722193 | Providing hotel and resort accommodation; restaurant and bar services; provision of facilities for conventions; provision of facilities for banquets; provision of conference rooms; catering services | N/A Based on Canadian registration |
| EDITION | 3923519 | hotel services; restaurant, catering, bar and cocktail lounge services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations | At least as early as Sep. 28, 2010 |
| EDITION | 3952240 | hotel services; restaurant, catering, bar and cocktail lounge services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations | At least as early as Sep. 28, 2010 |
| GAYLORD HOTELS | 2762447 | PROVIDING CONVENTION FACILITIES; PROVIDING FACILITIES FOR EXHIBITIONS; PROVIDING BANQUET AND SOCIAL FUNCTION FACILITIES FOR SPECIAL OCCASIONS; HOTEL SERVICES, HEALTH RESORT SERVICES; RESTAURANT, FOOD CATERING AND BAR SERVICES; NIGHT CLUB AND LOUNGE SERVICES; BARBER SHOP; HEALTH SPAS; BEAUTY SALON SERVICES | At least as early as Oct. 26, 2001 |

| | | | |
|---|---|---|---|
| GAYLORD | 4996260 | hotel services; bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as Oct. 26, 2001 |
|  | 2765288 | hotel services; resort lodging services; providing general purpose convention facilities; arena services, namely providing facilities for conventions and exhibitions; providing banquet and social function facilities for special occasions; restaurant services; food catering services; Bar services; night club and cocktail lounge services | At least as early as Jun. 2002 |
|  | 2853711 | Hotel services; resort lodging services; providing general purpose convention facilities; providing banquet facilities and social function facilities for special occasions; arena services, namely, providing facilities for conventions and exhibitions; restaurant services; food catering services; bar services; cocktail lounge services | At least as early as Oct. 26, 2001 |
| AUTOGRAPH COLLECTION | 3808481 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as Mar. 18, 2010 |

14

| | | | |
|---|---|---|---|
| AUTOGRAPH COLLECTION | 3833045 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as Mar. 18, 2010 |
| COURTYARD | 1562811 | HOTEL AND RESTAURANT SERVICES | At least as early as Oct. 15, 1983 |
| COURTYARD BY MARRIOTT | 1329051 | Hotel and Restaurant Services | At least as early as Oct. 15, 1983 |
| COURTYARD Marriott | 4663920 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Jul. 2003 |
| COURTYARD BY MARRIOTT | 5556877 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Aug. 15, 2017 |
| RESIDENCE INN | 1305416 | Hotel Services | At least as early as Jan. 1975 |
| RESIDENCE INN | 1439596 | HOTEL AND MOTEL SERVICES | At least as early as May 1986 |

15

| RESIDENCE INN BY MARRIOTT | 3635354 | Hotel services; restaurant services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Jul. 1987 |
|---|---|---|---|
| **Residence**INN BY MARRIOTT | 5618981 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as Apr. 23, 2018 |
| **Residence Inn Marriott** | 5880482 | Hotel services; restaurant services; bar services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Aug. 09, 2014 |
| **FAIRFIELD INN & SUITES Marriott** | 3784396 | Hotel services; restaurant services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Jun. 2009 |
| FAIRFIELD BY MARRIOTT | 5693386 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social | At least as early as Apr. 03, 2018 |

| | | | |
|---|---|---|---|
| | | function facilities for special occasions; and reservation services for hotel accommodations for others | |
| Fairfield BY MARRIOTT | 5556849 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Apr. 03, 2018 |
| MOXY | 4973477 | Hotel services and reservation services for hotel accommodations for others | At least as early as Mar. 05, 2016 |
| SPRINGHILL SUITES | 2308002 | HOTEL, RESTAURANT, CATERING, BAR AND LOUNGE SERVICES; PROVISION OF FACILITIES FOR MEETINGS, CONFERENCES AND EXHIBITIONS; RESERVATION SERVICES FOR HOTEL ACCOMMODATIONS | At least as early as Dec. 17, 1998 |
| SPRINGHILL SUITES BY MARRIOTT | 3635357 | Hotel services; restaurant services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Dec. 17, 1998 |
| SPRINGHILL SUITES MARRIOTT | 5172735 | hotel services; bar and restaurant services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for | At least as early as Mar. 01, 2016 |

| | | hotel accommodations for others | |
|---|---|---|---|
| SPRINGHILL SUITES BY MARRIOTT | 5710599 | hotel services; bar and restaurant services; provision of general purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservation services for hotel accommodations for others | At least as early as Oct. 01, 2018 |
| TOWNEPLACE SUITES | 2076489 | hotel services | At least as early as Feb. 23, 1997 |
| TOWNEPLACE SUITES BY MARRIOTT | 3635353 | Hotel services and reservation services for hotel accommodations for others | At least as early as Feb. 23, 1997 |
| TOWNEPLACE SUITES MARRIOTT | 5157601 | Hotel services and reservation services for hotel accommodations for others | At least as early as Feb. 2016 |
| TOWNEPLACE SUITES BY MARRIOTT | 5725583 | Hotel services; Making hotel reservations for others; Providing banquet and social function facilities for special occasions; Provision of conference, exhibition and meeting facilities; Restaurant services | At least as early as May 14, 2018 |
| AC HOTEL | 4895882 | Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as May 11, 2011 |
| AC HOTELS BY MARRIOTT | 4390299 | Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; | At least as early as May 19, 2011 |

| | | | |
|---|---|---|---|
| | | provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | |
|  | 4390298 | Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as May 19, 2011 |
|  | 4394553 | Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as May 19, 2011 |
| AC | 5286306 | hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special occasions; and reservations services for hotel accommodations for others | At least as early as May 11, 2011 |
| AC HOTELS | 4955012 | Hotel services; restaurant, catering, bar and cocktail lounge services; resort lodging services; provision of general-purpose facilities for meetings, conferences and exhibitions; provision of banquet and social function facilities for special | At least as early as May 11, 2011 |

| | | occasions; and reservations services for hotel accommodations for others | |
|---|---|---|---|

("Marriott's trademark registrations").

3.      Marriott's federal trademark registrations' respective dates of first use are true and correct and Marriott has continuously used its registered marks in interstate commerce with the marks' respective goods and services since at least as early as the first use date indicated on Marriott's trademark registrations.

4.      The rise of online shopping and OTAs offered consumers additional ways to readily research hotel room options and book hotel room reservations. (Marriott's Am. Ans. ¶ 3.)

5.      The United States is home to millions of hotel rooms, and the United States hotel industry generates hundreds of billings of dollars in annual revenue. (Marriott's Am. Ans. ¶ 37.)

6.      Marriott owns only a limited number of properties, but more typically franchises, manages or operates properties owned by third parties. (Marriott's Am. Ans. ¶ 38.)

7.      TravelPass is an affiliate online travel agency whose business model involves selling hotel inventory online or subsequently through call centers using access to hotel inventory it receives from larger online travel agencies, such as Expedia or Priceline, or through bed banks, wholesalers, or global distribution systems.

8.      Search engines auction keywords to advertisers. (Marriott's Am. Ans. ¶ 46)

9.      Search engines use auctions to price their paid search results. (Marriott's Am. Ans. ¶ 50.)  Search engines set the terms for identifying which keyword bids will result in ads being displayed and those ads' placement. (Marriott's Am. Ans. ¶ 53.)

10.     Hotel brands and OTAs, like other advertisers, may bid on keywords for placement of ads and links to their respective websites.

11.     If an advertiser bids on a keyword and wins an auction, it is charged a cost per click ("CPC") if (1) the ad is served and (2) the consumer clicks on the ad.

12.     An advertiser is charged regardless of whether a sale is made.

13.     In 2004, Google changed its trademark policy to allow third parties to bid on trademarks as keywords. (Marriott's Am. Ans. ¶ 56.)

14.     OTAs allow hotel consumers to engage in comparison-shopping for multiple properties and brands by allowing consumers to compare many prices, locations, amenities, and availability on a computer monitor, tablet, or other mobile device screen. (Marriott's Am. Ans. ¶ 69).

15.     Negative keywords operate to prevent ads for that entity from generating on search queries that contain the selected negative keyword, even if other search terms in the query would have otherwise yielded an ad for that entity. (Marriott's Am. Ans. ¶ 99)

## F.     <u>CONTESTED ISSUES OF FACT AND LAW</u>

The Parties identify the following issues of fact and law that remain to be litigated. To the extent any issue of law discussed below is deemed to be an issue of fact, it is incorporated into this section. The Parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in the motions for summary judgment and any motions *in limine*.

a.     <u>Antitrust Claims</u>

1.     Whether Marriott violated Section 1 of the Sherman Act by entering into a contract, combination, or conspiracy that unreasonably restrained trade in a relevant market.

2.     Whether TravelPass's claims should be reviewed under a per se or rule of reason standard (either quick look or full-blown rule of reason standard).

a. Subject to the foregoing determination of the Court, whether there has been a substantial harmful effect on competition in a relevant market, and if so, whether there are procompetitive benefits that outweigh any anticompetitive harm.

3. Whether TravelPass suffered injury-in-fact as a result of allegedly illegal conduct.

4. Whether the allegedly illegal conduct was a material cause of TravelPass's injury-in-fact.

5. Whether TravelPass's injury is an "antitrust injury."

6. Whether TravelPass has suffered lost profits, and the amount of profits that were lost as a result of the alleged violations.

7. Whether TravelPass has suffered a reduction in business value, and the amount of the reduction in business value that occurred as a result of the alleged violations.

8. Whether TravelPass is entitled to injunctive relief.

9. Whether TravelPass is entitled to recover its reasonable attorneys' fees in connection with the successful prosecution of its claims in this action.

b. <u>Trademark Counterclaims</u>

1. Whether TravelPass violated Section 32(1) of the Lanham Act by infringing Marriott's trademarks.

2. Whether TravelPass violated 15 U.S.C. § 1125(a) by engaging in false advertising.

3. Whether TravelPass violated the common law of Texas by infringing Marriott's trademarks.

4. Whether TravelPass's acts are causing immediate and irreparable injury to Marriott.

5.      Whether TravelPass suffered injury-in-fact and/or damages as a result of allegedly illegal conduct.

6.      Whether TravelPass's acts were willful.

7.      Whether Marriott's claims are barred by the doctrine of fair use.

8.      Whether Marriott's claims are barred by the doctrine of laches.

9.      Whether Marriott's claims are barred by the doctrine of unclean hands.

10.     Whether Marriott's claims are barred by equitable estoppel.

11.     Whether Marriott is entitled to corrective advertising damages.

12.     Whether Marriott has engaged or intends to engage in corrective advertising.

13.     Whether Marriott is entitled to injunctive relief.

14.     Whether Marriott has suffered any compensable harm.

15.     Whether Marriott is entitled to disgorgement damages.

16.     Whether Marriott is entitled to punitive damages.

17.     Whether Marriott is entitled to recover its reasonable attorneys' fees in connection with the successful prosecution of its counterclaims in this action.

## G.      LIST OF WITNESSES

a.      Plaintiffs'/Counterclaim Defendants' Witnesses

Plaintiffs' Witness List is attached as Exhibit A and includes the following individuals who will testify at trial:

- Ryan McCoy, TravelPass
- Austin Lowe, TravelPass
- Dr. David Evans, Antitrust Expert
- Jason Hachkowski, Search Engine Marketing Expert
- David Leathers, Damages Expert
- Dr. Wayne Hoyer, Trademark Expert
- Shawn Paley, Marriott

- Alexander Pyhan, Marriott
- Carlisle Connally, Marriott
- Chad Herendeen, Marriott
- Nicolette Harper, Marriott
- Alexander Edlund, Choice
- Doug Lisi, Choice
- Dustin Bomar, Hilton
- Michael Menis, IGH
- Andrew Rubinacci, IHG
- Ches Eaton, IHG
- Erin Hake, IHG
- Mark Henneges, IHG
- Matt Duckworth, Expedia
- Marriott's Corporate Representative(s) at trial

In addition, Plaintiffs may call the following witnesses live or by deposition:

- Robert McDowell, Choice
- Thomas Turley, Hilton
- Chris Copp, IHG
- Christopher Burgess, Choice
- Cindy Estis-Green, Kalibri Labs
- Hayes Anderson, TravelPass
- Mike Hurren, TravelPass
- James Hall, TravelPass
- Matthew Bully, Marriott
- Amy McClain, Beeby Clark+Meyler
- Carolyn Hosna, White Lodging
- Steve Sickel, Roomkey
- Rene Hodos, Marriott
- Drew Pinto, Marriott
- Jenna Amaral, Hilton
- Chris LaRose, Hilton
- Ashley Dozier, Marriott
- Elena Zadorojny, Choice
- Daniel Kubis, Choice
- Abjiht Patel, Choice
- Jen Owin, Choice

- Chris Hale, Hyatt
- Witnesses called by Marriott to testify live at trial

The topics on which these witnesses are expected to testify are detailed in Exhibit A.

b.    <u>Defendant/Counterclaim Plaintiff's Witnesses</u>

Marriott's Witness List is attached as Exhibit B and includes the following individuals who

will testify at trial:

- Alexander Pyhan, Marriott
- Dr. Bruce Isaacson, Trademark Expert
- Dr. Stephen Becker, Damages Expert
- Dr. Catherine Tucker, Antitrust, Marketing, and Search Engine Marketing Expert
- Dr. Keith Ugone, Antitrust Expert
- Robert Bruce, TravelPass
- Mike Hurren, TravelPass

In addition, Marriott may call the following witnesses live or by deposition:

- Carlisle Connally, Marriott
- Griff Garwood, Marriott
- Nicolette Harper, Marriott
- Chad Herendeen, Marriott
- Renee Hodos, Marriott
- Shafiq Khan, Marriott
- Drew Pinto, Marriott
- Donald Cornaud, TravelPass
- Steven Dalley, TravelPass
- James Hall, TravelPass
- Andrew Hill, TravelPass
- Scott Knudson, TravelPass
- Austin Lowe, TravelPass
- Ryan McCoy, TravelPass
- Fabrice Mode, TravelPass
- Chad Montgomery, TravelPass
- Daniel Nelson, TravelPass
- Brad Pace, TravelPass

- Cameron Urry, TravelPass
- Neil Valentine, TravelPass
- Ryan Williams, TravelPass
- JoAnn Deal, Better Business Bureau
- Matt Duckworth, Expedia
- Adam Glucksman, The Carlyle Group
- Cindy Estis-Green, Kalibri Labs
- Carolyn Hosna, White Lodging
- Amy McClain, Beeby Clark+Meyler
- Ronald Mika, Sorenson
- Steven Sickel, Roomkey
- Witnesses called by Plaintiffs to testify live at trial

## H.    LIST OF EXHIBITS AND DEPOSITION DESIGNATIONS

The Parties' Trial Exhibit Lists and deposition designations (along with outstanding objections thereto and objection legends) are attached to this joint pretrial order. The Parties exhibit lists are subject to the Court's rulings on the outstanding motions *in limine*. The Parties shall continue to meet and confer concerning their respective exhibit lists, deposition designations and outstanding objections. Both parties reserve the right to amend or modify their respective Exhibit Lists.

Plaintiffs' Trial Exhibit List is attached as Exhibit C

Defendant's Trial Exhibit List is attached as Exhibit D

The Parties' deposition designations are attached as Exhibit E.[1]

## I.    LIST OF ANY PENDING MOTIONS

| Dkt. No. | Pending Motion |
|---|---|
| 557 | Marriott's Motion for Partial Summary Judgment on Plaintiffs' Per Se Claim |
| 561 | TravelPass's Motion for Partial Summary Judgment to Apply the Per Se Antitrust Standard |

---

[1] TravelPass will serve the deposition designations for witnesses deposed pursuant to the Court's Sanction Order (Dkt. 569) no later than October 19, 2021.  Marriott will serve any counter designation no later than October 22, 2021.

| 562 | Marriott's Motion for Summary Judgment on TravelPass's Antitrust Claims |
| 685 | TravelPass's Motions *in Limine* |
| 687 | Marriott's Motions *in Limine* |

**J.**   **PROBABLE LENGTH OF TRIAL**

The probable length of trial is seven to eight business days.

**K.**   **MANAGEMENT CONFERENCE LIMITATIONS**

The Parties agree concerning the probable length of trial as set forth in Section J. The Parties have not otherwise agreed to any other specific limitations germane to this Section.

**L.**   **TRIAL MANAGEMENT PROCEDURES**

The parties have met and conferred and agreed to the following trial management procedures:

The parties will identify witnesses to be called live and by deposition, in the order of call, 9:00 am the day before the day of trial during which the witnesses will testify. In other words, if a witness will testify on a Wednesday, the witness must be identified by 9:00 am on the previous Tuesday.

The parties will exchange copies of all documentary, graphic, slide, animation, and any other form of demonstratives they plan to use at trial for use during direct examination – but not for cross-examination – by 7:00 pm the night before their intended use. In other words, if a demonstrative will be used on a Wednesday, it must be exchanged or made available by 7:00 pm on the previous Tuesday. The parties shall exchange objections to these demonstratives by 9:00 pm on the day the demonstratives are received. The parties will meet and confer to resolve objections by 10:00 pm. Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party. The parties agree that "demonstratives" do not include document call-outs, highlighting, or non-argumentative titles.

The parties agree to exchange demonstratives to be used in opening statements no later than 8:00 pm the day before the first day of trial. The parties shall meet and confer to resolve any possible disputes or objections to such demonstratives at or before 10:00 pm. Demonstratives to be used in closing statements shall be exchanged no later than 11:00 pm the night before closing arguments. The parties shall notify the other party and confer to resolve any possible disputes or objections to such demonstratives at or before 8:00 am.

For each witness that a party intends to call by deposition, the party shall, by 7:00 p.m. three calendar days prior to the date the party intends to call such witness, provide the other side with a list of final designations that will be played and the order in which each designation will be played.  The receiving party shall provide a final list of objections and counter-designations by 7:00 p.m. the following day.  The parties will meet and confer as to any objections no later than 9:00 p.m. that same evening and present any remaining disputes to the Court on the following day (so that the Court can resolve the disputes on the day prior to the proposed playing of the testimony).

    a.  When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by video or by transcript, will be introduced with the designated testimony for which it is counter-designated.

    b.  The party who seeks to introduce the deposition testimony will be responsible for preparing the video clips to be played, including the counter-designations made by the other side.  The party preparing the video clips will share the video clips with the other side by 7:00 p.m. the day prior to playing the testimony.

    c.  The parties shall remove counsel's objections or any discussion between counsel from the deposition video clips that are to be shown to the jury.

Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

In lieu of lodging originally signed versions of depositions with the Court, lodging copies of transcripts (signed or unsigned) is sufficient and will not preclude a particular deposition from being used at the trial.

## M.   <u>CERTIFICATIONS</u>

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

(1)   Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)   Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)   Each exhibit in the List of Exhibits herein:

(a)   is in existence;

(b)   is numbered; and

(c)   has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Attorneys for Plaintiffs:        */s/ Christopher J. Schwegmann*

Christopher J. Schwegmann (***Lead Attorney***)
State Bar No. 24051315
Samuel B. Hardy, IV
State Bar No. 24074360
Christopher W. Patton
State Bar No. 24083634
Ruben A. Garcia
State Bar No. 24101787
Cory C. Johnson
State Bar No. 24046162

Rebecca L. Adams
State Bar No. 24098255
Barira Munshi
State Bar No. 24095924
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
**SCHNEIDER WALLACE COTTRELL KONECKY, L.L.P.**
2000 Powell Street, Suite 1400
Emeryville, California 94608
(415) 421-7100 Telephone
(415) 421-7105 Facsimile

Attorneys for Defendant:       */s/ Jennifer H. Doan (with permission)*

Jennifer H. Doan
Texas Bar No. 08809050
Cole A. Riddell
Texas Bar No. 24105423
HALTOM & DOAN
6500 Summerhill Rd., Ste. 100
Texarkana, Texas 75503
Tel: (903) 255-1000
Fax: (903) 255-0800

Shari Ross Lahlou (*pro hac vice*)
Thomas J. Miller (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Tel: (202) 261-3300
Fax: (202) 261-3333

Jeffrey L. Poston (*pro hac vice*)
David Ervin (*pro hac vice*)
Britton Davis (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

Jordan L. Ludwig (*pro hac vice*)
CROWELL & MORING LLP
515 South Flower Street, Floor 40
Los Angeles, California 90071
Telephone: (213) 622-4750

(Note: An attorney of record may sign and certify this order on behalf of opposing counsel "with permission.")

**SIGNED this 21st day of October, 2021.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE